**UNITED STATES of America**

v.

**James Dale BREWER.**

**Cr. No. 3–77–97.**

United States District Court,
E. D. Tennessee, N. D.

March 9, 1978.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for plaintiff.

Rufus W. Beamer, Jr., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

### Background

This criminal action wherein defendant stands charged by the Grand Jury with one count of kidnapping (18 U.S.C. § 1201) and one count of transporting a stolen motor vehicle (from Jellico to Valdosta, Georgia) is set for trial on Wednesday, March 15, 1978. The indictment was returned by a Grand Jury sitting in the Middle District of Georgia, Valdosta Division, on September 23, 1977.

On October 10, 1977, Chief Judge Robert Elliott granted the motion of the defendant and his co-defendant (not before the Court in this action) to transfer the case, under Rule 21, Fed.R.Crim.P., to the Eastern District of Tennessee. Judge Elliott reasoned that since it was only the fortuitous circumstance that the victim escaped his abductors in Valdosta that gave that District any connection with the case, it was better tried where the alleged abduction occurred—the Eastern District of Tennessee which includes Jellico, Tennessee.

### Motion

The defendant has moved to suppress the Government's proposed introduction of certain past convictions as impeachment evidence if the defendant takes the stand. While the defendant filed the motion, Rule 609 places upon the Government the burden of persuading the Court that the convictions are admissible. *See United States v. Smith*, 179 U.S.App.D.C. 162, 173–74, 551 F.2d 348, 359–60 (1976). Rule 609(a), Fed.R.Evid., provides, in pertinent part:

> *Impeachment by Evidence of Conviction of Crime*
>
> (a) General Rule. For the purpose[s] of *attacking the credibility* of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but *only if* the crime
>
> (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, *and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant*, or
>
> (2) involved dishonesty or false statement, regardless of the punishment."
>
> (emphasis added).

The four convictions which the Government wants to introduce to impeach the defendant's testimony, should he take the stand, all fall in category 1 above. All four convictions meet the first requirement under category 1, *i. e.*, they were punishable by death or imprisonment in excess of one year. Thus, the only requirement to be met before these convictions are admissible for impeachment, is the requirement that the Court determine that the probative value of admitting the evidence of these convictions outweighs the prejudicial effect to the defendant.

Before discussing the standards used by the courts in determining whether the probative value outweighs the prejudicial effect, it must be noted that defendant's attorney argues that the special provisions of 609(b), dealing with convictions over ten years old (computed under the standard provided by 609(b)) should apply to all four convictions. For the reasons stated below, the special provisions of subpart (b) of Rule 609 do not appear to apply to any of the convictions.

### Time Limit in 609(b)

Under subpart (b) of Rule 609, when a conviction is offered as impeachment evidence and it is over ten years old, it is *not* admissible *unless* :

The Court determines, in the interests of justice, that the probative value of the conviction *supported by specific facts and circumstances substantially outweighs its prejudicial effect.*

609(b) also requires the Government to give advance notice of its intention to use such evidence.[1]

■ The Government argues that the more stringent test of 609(b) does not apply to these convictions because, under the formula provided in the Rule for determining how old a conviction is, none of these convictions is over ten years old.

Rule 609(b) states that it shall apply when "more than ten years has elapsed since the date of the conviction *or* of the release of the witness from the confinement imposed for that conviction, whichever is the later date . . .."

The convictions in question are as follows:

| Date of Conviction | | | |
|---|---|---|---|
| 10–20–60 | Kidnapping | E. D. Kentucky | 10 years |
| 1–6–68 | Rape | Greene County, Ohio (State Court) | 3–20 years |
| 1–6–68 | Aggravated Assault | " | 1–5 years |

| Date of Conviction | | | |
|---|---|---|---|
| 1–6–68 | Assault with a deadly weapon | " | 1–15 years (the three Ohio convictions were consecutive) |

The relevant date obviously is the date the defendant was released from the confinement imposed for each conviction. While the three 1968 Ohio state convictions were rendered slightly over 10 years ago, the minimum sentence of one year on each conviction means that whichever he served first, the one year minimum set his release date *for that conviction* within the last ten years. Defendant was not actually sentenced until March 22, 1968, less than ten years ago. Therefore, March 22, 1969 would have been the earliest release date on either the 1–3 years or 1–15 years sentences, and that release date is unquestionably within the last ten years.

■ As to the federal kidnapping charge, although the conviction occurred over seventeen years ago, the release date is the determinative date. Defendant was first released from federal custody on June 27, 1967, and placed on parole. If this were the *only* release date, it would have occurred over ten years ago, and the special provisions of 609(b) would apply. However, while on federal parole, defendant was convicted of the above mentioned state crimes on January 6, 1968. After serving time on the state convictions, defendant was *recommitted to federal confinement* for violation of parole on the kidnapping conviction. He was released on February 9, 1976, and again placed on parole. This second release date is well within the last ten years, and thus 609(b) does not apply.

■ Defendant argues that release from "confinement imposed for that conviction" means the initial release and not subsequent releases following reconfinement for parole violations. While no case addressing this issue has been cited by either side, and

1. The Government, realizing that there might be some debate as to whether 609(b) applied, wisely filed advance notice as required under that subsection.

the Court has found none, the Court is of the opinion that reconfinement pursuant to parole violation is "confinement imposed for [the original] conviction," and therefore the release date from that second confinement is the one used in computing time under Rule 609(b).

It should be noted that, even without the intervening 5½ years state incarceration, *i. e.*, had defendant immediately been returned to federal confinement upon conviction of the state crimes, his release date (assuming an identical period of federal incarceration of over two years) would have been in April 1970, also well within the last ten years. Having ruled that none of these convictions requires the application of the stringent standards of 609(b), the Court must now determine if the Government has met the standard applicable under 609(a).

*Balancing Tests Under 609(a)*

Application by the Courts of the 609(a) requirement that a determination be made that the probative value of admitting the evidence outweighs its prejudicial effect has generally followed the formula developed in the D.C. Circuit in a string of cases starting with Judge McGowan's opinion in *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965), and including an often quoted opinion by then Judge Burger in *Gordon v. United States*, 127 U.S.App. D.C. 343, 383 F.2d 936 (1967), *cert. denied*, 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968).

█ The *Luck-Gordon* standards were delineated prior to the adoption of the Federal Rules of Evidence in 1975, but the factors used in those cases are still relevant under Rule 609. *See* 3 Weinstein's Evidence ¶ 609[03]; *United States v. Mahone*, 537 F.2d 922 (7th Cir.), *cert. denied*, 429 U.S. 1025, 97 S.Ct. 646, 50 L.Ed.2d 627 (1976). However, some parts of the *Luck-Gordon* rule are no longer applicable under 609. *See United States v. Smith*, 179 U.S. App.D.C. 162, 551 F.2d 348 (1976). The five factors discussed by Judge Burger in *Gordon* are:

(1) the nature of the crime;

(2) the time of conviction and the witness' subsequent history;

(3) similarity between the past crime and the charged crime;

(4) importance of defendant's testimony; and

(5) the centrality of the credibility issue.

(1) *The Nature of the Crimes*

The nature of these crimes is that of violent action against individuals. In *Gordon*, Judge Burger noted, "Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity." *Id.*, 127 U.S.App.D.C. at 347, 383 F.2d at 940. Thus, the nature of these four convictions is a factor against admitting them for impeachment purposes.

(2) *The Time of Conviction and the Witness' Subsequent History*

While the time elapsed since the actual convictions at issue here range from ten to seventeen years, the defendant's conduct following release from custody has been less than would be expected of a rehabilitated individual. Not only did the defendant commit the three, previously mentioned, serious state crimes while on federal parole in 1968, after his release on parole from federal custody in February 1976, he was convicted of another crime in Ohio and was reconfined again for violation of his federal parole. The Court is of the opinion that the defendant's continued conflict with the law, even while on parole, is a factor supporting admission of the convictions for impeachment purposes.

(3) *The Similarity Between the Past Crime and the Charged Crime*

The principle involved here was explained by Judge Burger in *Gordon* :

A special and even more difficult problem arises when the prior conviction is for the same or substantially the same con-

duct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that 'if he did it before he probably did so this time.' As a general guide, those convictions which are for the same crime should be admitted sparingly; one solution might well be that discretion be exercised to limit the impeachment by way of a similar crime to a single conviction and then only when the circumstances indicate strong reasons for disclosure, and where the conviction directly relates to veracity. 127 U.S.App.D.C. at 347, 383 F.2d at 940.

This principle would apply only to the prior kidnapping conviction. If the Court should admit any of the four convictions, a limiting instruction would be given to the jury emphasizing that they are admitted only to impeach the credibility of the defendant as a witness. The question is whether, even with a limiting instruction, the evidence of a prior conviction for the same crime might, nevertheless, allow the jury to engage in the impermissible assumption that "if he did it before he probably did so this time."

A recent case, *United States v. Cohen*, 544 F.2d 781 (5th Cir. 1977), is relied on by the Government as demonstrating that similarity of the crimes is a factor favoring admission. The Court does not agree with the Government's interpretation of *Cohen*. In *Cohen*, the Fifth Circuit determined that because the prior conviction was one *involving dishonesty* (mail fraud), a type of crime "far more likely to have probative value" on the issue of truthfulness than most violent crimes, and because the charged crime also related to dishonesty, the prior conviction was highly probative of the truthfulness of the defendant.

Based on the principle stated in *Gordon*, the Court is of the opinion that there is a strong argument to keep the prior kidnapping conviction from the jury's knowledge.

(4) & (5) *Final Factors*

Factors four and five seem to counterbalance each other in this case. While defendant's testimony may be of some importance, a factor favoring nonadmission, at the same time his credibility may be a central issue in the case, a factor favoring admission.

### Conclusion

Although the Court, at the hearing on this motion, initially ruled that all four convictions were admissible, further consideration has convinced the Court that the probative value of the prior kidnapping conviction on the issue of defendant's truthfulness, should he take the stand, does not outweigh the prejudicial effect knowledge of such conviction could have on the jury. Admission of the other three convictions, all involving serious crimes, should sufficiently serve the purpose of impeaching the defendant's credibility. The addition of one more conviction would seem to add little to the Government's attempt to impeach the defendant's credibility. However, the fact that the additional conviction was for the same crime as one of those for which the defendant is presently charged, would substantially increase the possible prejudicial effect such testimony might have on the jury, in spite of any limiting instruction the Court would give contemporaneously with the admission. Rather than allow this "overkill" at the risk of prejudicial error, the Court is of the opinion, and holds, that the prior kidnapping conviction is inadmissible under Rule 609(a). As for the three other convictions, the Court holds that the Government has established that the probative value of these three convictions for impeachment purposes outweighs the prejudicial effect that admission of such evidence would have on the jury.

Order Accordingly.