Argued and submitted July 12, affirmed August 25,
reconsideration denied September 29,
petition for review denied October 19, 1982 (293 Or 653)

# STATE OF OREGON,
*Respondent,*

*v.*

# ALLEN ISAAC CARDEN,
*Appellant.*

(No. 21-362, CA A23858)

650 P2d 97

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James E. Mountain, Jr., Deputy Solicitor General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Sheryl D. Schneider, Certified Law Clerk, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his conviction for burglary in the first degree. ORS 164.225. He argues that the court erred by admitting testimony concerning two prior burglary convictions and by giving an instruction that allowed the jury to infer an intent to steal from a finding of defendant's unlawful entry. We affirm.

On November 18, 1981, defendant was discovered in the home of his next-door neighbor, George Sorenson, by two of Sorenson's other neighbors—Dorothy Foland and J. E. McKinney. Sorenson had asked McKinney to check his home regularly during November while Sorenson was away.

At trial, McKinney testified that he saw the porch light on in the Sorenson home at about 4:30 p.m. and that he and Foland went to investigate. After knocking, he opened the door with a key and went in. They turned on the lights and searched the house. McKinney and Foland initially saw defendant in either the kitchen or the utility room; he was wearing socks or "karate gloves" on his hands that were pulled up to his elbows. Defendant also held a knife. Foland yelled, "What are you doing here?" Defendant responded, according to McKinney and Foland, "I give up. I give up." Defendant explained to the pair that he had seen a light come on in the Sorenson home and had entered to check on it. Foland told defendant to leave, and he did.

Defendant testified that he heard glass breaking and went to the Sorenson home to investigate. He said that he found the back door ajar and went in to see if someone was in the house. Inside, according to defendant, he heard someone talking, assumed it was a burglar, and hid in the closet. When defendant saw McKinney, whom he recognized, defendant left the closet and walked toward him. Defendant testified that he asked McKinney if he heard glass being broken. He also said that he put the knife he was holding on the table to avoid startling the two neighbors. Defendant denied saying, "I give up."

■ ■ Before trial, the prosecutor informed the court that he intended to ask defendant about his prior convictions for burglary. He also stated that defendant's record included

two misdemeanor larceny convictions and a conviction for assault, about which he did not intend to inquire. The defendant objected to questions concerning the prior burglaries. The court ruled as follows:

> "THE COURT: I think that burglary is that kind of a crime that does relate to the credibility of a witness, for that is in that witness's past, whether as a witness in an automobile case or in a criminal case, because — not only does burglary, particularly in relation to theft, involve stealth, but it also involves dishonesty, and, of course, dishonesty weighs heavily on the issue of credibility, and that is what we are — because thievery is dishonesty, and that issue of thievery/dishonesty weighs heavily on the issue of credibility.

> "I would find that the probative value of that dishonesty and issue of credibility — probative value of it outweighs the prejudicial effect upon the Defendant; although, I am sure everybody will agree that it has some prejudicial effect, but it has more probative value, and therefore, I will allow the State, if the Defendant chooses to take the stand, to use those three — two or three convictions, whatever they have available to them."

Defendant's first assignment of error attacks that ruling.

OEC 609(1)[1] states:

> "* * * (1) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (b) involved a false statement."

Determination whether the probative value of evidence outweighs its prejudicial effect is within the trial court's discretion. The commentary to the Oregon Evidence Code sets out four criteria to guide that discretion. They are (1) the nature of the prior crime, in terms of its bearing on

---

[1] The Oregon Evidence Code, codified as ORS 40.010 through ORS 40.585, was enacted by the Oregon Laws 1981, chapter 892, sections 1 through 101. The Act took effect on January 1, 1982. Or Laws 1981, ch 892, § 101. The trial in the present case was conducted on January 27, 1982.

defendant's credibility; (2) the date of the prior conviction, in terms of its proximity or remoteness to the present proceeding; (3) the similarity of the prior crime to the crime on trial, in terms of the tendency of the jury to treat the impeachment evidence as substantive proof; and (4) the importance of defendant's testimony in relation to the issues in the case at trial. *See* Sixty First Legislative Assembly, Oregon Evidence Code, Rule 609, Commentary, p 123-24.

■     The trial court was entitled, under the first and second criteria, to admit evidence of the prior burglary convictions. Those convictions were clearly relevant to defendant's credibility, and they occurred within the time limit set out in the statute. *See* OEC 609(2)(a). The defendant's claim is that the final two criteria, applied to the facts of this case, weigh so heavily in favor of excluding the evidence that the trial court's ruling constituted an abuse of discretion. We discuss those two criteria in turn.

The commentary explains the similarity criterion as follows:

> "Similarity to crime charged. This factor relates to prejudicial impact on the accused. If the elements of the prior conviction are similar to those of the crime charged, then analysis under this factor favors exclusion of the prior convictions. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those that are for the same or a similar crime. Inevitably there is pressure on lay jurors to use these as substantive evidence of guilt even though they are not admissible as such under ORS 404(3). As a general guide, these convictions should be used sparingly. See, e.g., *United States v. Bailing,* 426 F2d 1236 (DC Cir 1970) (exluding evidence of prior conviction for receiving stolen goods in trial for burglary)."

The rule and the commentary reflect a legislative attempt to reconcile the use of prior crimes that are relevant to a defendant's credibility with the obvious danger that similar crimes, offered ostensibly for impeachment purposes, might be considered as substantive evidence of guilt. That is, there is a danger that a defendant, charged with crime A and impeached with prior convictions for crime A, will be convicted, not on the evidence, but because the jury

believes that a person who once committed crime A would do so again. The commentary suggests that, where several different crimes are available for impeachment, the need to use any particular crime decreases, and thus the argument for precluding inquiry into crimes that are the same or similar becomes stronger. Yet, there is no absolute prohibition against the use of similar prior crimes. The weighing process requires a determination of whether a defendant's prior dissimilar crimes are sufficiently numerous and impeaching of credibility to justify exclusion of any similar crimes. The legislature chose to place that difficult balancing decision in the trial court's discretion.

The trial court exercised that discretion correctly here.[2] The prosecutor represented to the court that defendant's criminal history consisted of felony convictions for assault and burglary and misdemeanor convictions for larceny. He declined to use the assault conviction, presumably because it had little bearing on credibility, and the larceny convictions, presumably because they were misdemeanors and therefore inadmissible under the rule. The remaining burglary convictions were arguably the only prior crimes that were both admissible under the rule and relevant to defendant's credibility.

■ Defendant's argument that the prosecution should be prevented from eliciting testimony as to those prior

---

[2] Appellate review of discretionary, evidentiary rulings is governed by the following guidelines:

" "* * * If the evidence has some probative value, but also presents difficulties * * * the judge must determine whether the value of the evidence outweighs, or is outweighed by, the offsetting considerations. We sometimes call the exercise of this kind of judgment "discretion." Its exercise requires the judge to weigh the value of the evidence in light of all the circumstances of the particular case, and his conclusion, if it is reasonable, will not be disturbed on appeal. Precedent is of little value in reviewing such cases, because even when cases involve similar issues and similar types of evidence, the other factors which may properly influence the trial court's ruling are highly variable. *We simply determine whether, on the facts of the particular case, the trial court's ruling was within the reasonable or permissible range. We need not determine whether his ruling was the only one possible. It may be that the record will support either admission or exclusion; if so, the trial court's ruling will be affirmed, regardless of which solution we would prefer.'"* State v. Madison, 290 Or 573, 579, 624 P2d 573 (1981), quoting from *Carter v. Moberly,* 263 Or 193, 200-01, 501 P2d 1276 (1972). (Emphasis supplied.)

crimes that are most relevant to credibility merely because the crimes are the same as the one charged is unacceptable. To do so would be to restructure judicially a balance struck by the legislature in another way. The legislature had good reason to strike the balance as it did: defendant's version would lead to the unreasonable result of treating more favorably a defendant who has committed the type of crime charged more than once than one whose earlier crimes were different.

## IMPORTANCE OF DEFENDANT'S TESTIMONY

Defendant also points out that the importance of his testimony to a fair resolution of his case weighs against admission of the burglary convictions. The commentary discusses the importance of a defendant's testimony to the weighing process. It states:

> "* * * If the testimony of the accused is crucial to a fair determination of the issues, as it would be in an assault/self-defense case without independent witnesses, then this factor tends to favor exclusion. The more central the issue of credibility is to a fair determination of guilt, the more desirable it is to encourage the accused to testify. * * *."

Defendant's exculpatory version of his reason for being in the house and his testimony that he did not say "I give up" when he encountered Foland and McKinney was certainly crucial to an accurate determination of defendant's guilt. Under the commentary's analysis, that should militate against admissibility of the prior burglary convictions. However, as the trial court's ruling indicates, because defendant's testimony was so important the probative value of prior crimes evidence relevant to defendant's credibility increases. This supports the argument for admitting evidence of the prior crimes. Thus, the same fact—that defendant's testimony was important—supports opposite results under the commentary's analysis.

Without purporting to resolve this conundrum fully, we point out that the factor relating to the importance of defendant's testimony is only one of four to be considered. The court apparently concluded that, balancing all four, the probative value of the prior crimes outweighed

the possibility of discouraging the defendant from testifying. There was no abuse of discretion in that ruling.[3]

■     Defendant also claims that the trial court erred by instructing the jury that an intent to steal could be inferred from his presence in a dwelling under circumstances showing an unlawful entry.[4] The state acknowledges our recent holding that giving such an instruction constitutes error. *State v. Johnson*, 55 Or App 98, 103-04, 637 P2d 211, *rev den* 292 Or 722 (1981). After the decision in *Johnson*, however, we held that we would not consider a claim of error with regard to the giving of this particular instruction if the defendant had not objected in the trial court. *State v. Davis*, 56 Or App 535, 537-38, 642 P2d 350 (1982). At trial, defense counsel expressly stated that defendant had no exceptions to the trial court's instruction. We therefore will not consider this assignment.

Affirmed.

---

[3] Defendant's attorney pointed out at oral argument that, unlike common law burglary, statutory burglary in Oregon, ORS 164.225(1) does not require entry at night. Instead, the statute merely requires an unlawful entry. He argued that conviction of such burglary therefore is not relevant to defendant's credibility. Defendant did not argue that point below and the trial court therefore did not have reason to ascertain the elements of burglary in Virginia at the time defendant was convicted in that state. We will not consider in this appeal an argument that defendant could have raised below but did not.

[4] The instruction stated:

" 'Intent' means that a person acts with a conscious objective to cause the result or to engage in the conduct described. You are instructed that you may infer an intent to steal on the part of the Defendant from his presence in the dwelling under circumstances showing an unlawful entry."