Argued and submitted June 6, reassigned October 17, affirmed December 18, 1984

# STATE OF OREGON,
*Respondent on review,*

*v.*

# PHILIP WADE McCLURE,
*Petitioner on review.*

## (CC 10-82-09308; CA A27547; SC S30560)

692 P2d 579

David E. Groom, Deputy Public Defender, Salem, argued the cause for petitioner on review. With him on the petition was Gary D. Babcock, Public Defender, Salem.

Robert E. Barton, Assistant Attorney General, Salem, argued the cause for respondent on review.

JONES, J.

## JONES, J.

In this criminal appeal, the defendant seeks reversal of his convictions for rape in the first degree, sodomy in the first degree, kidnapping in the first degree and robbery in the first degree.

We need not detail the sordid facts of this case. Suffice it to say that a young student at the University of Oregon was running on a public bike path when she was kidnapped, raped, sodomized and robbed. The defendant had just been paroled from the Oregon State Penitentiary after being convicted of raping a 15-year-old near the same area in Eugene three years previously. In the present case he denied guilt and professed an alibi defense.

We accepted review in this case to determine whether the circuit court erred in denying defendant's motion to exclude evidence of his prior conviction of rape in the first degree. This evidence was offered by the prosecution under OEC 609(1), which provides in relevant part as follows:

> "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established by public record, but only if the crime (a) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant * * *."

Instead of waiting to object to the prior conviction impeachment evidence when offered by the prosecutor during defendant's cross-examination, the defense in this case filed a formal motion "in limine," *see State v. Foster,* 296 Or 174, 182, 647 P2d 587 (1983), prior to trial to exclude the evidence of the prior rape conviction. At the conclusion of the pretrial hearing, the trial judge stated that he would allow the prior conviction in evidence, but did not designate when, under what conditions or to what extent the evidence would be received.

The state claims that the defendant did not make a sufficient record for this court to review the trial court's ruling

admitting the prior rape conviction for impeachment in the event the defendant testified. The state's brief reads:

> "The defendant did not testify and made no offer of proof that the reason for his failure to take the stand was the pretrial ruling."

The trial court had under advisement the admissibility of testimony about the prior rape committed by the defendant offered by the state as a "signature" type crime under OEC 404(3), which provides:

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

When defense counsel stated, "Well, I will represent to the Court, if your honor does permit the other crimes evidence, Mr. McClure will not testify," the court also had under advisement the state's offer of the prior conviction for impeachment purposes under OEC 609(1)(a). We believe that the message, though ambiguous, was that the defendant would not testify if the prior crime evidence was allowed in as substantive evidence under OEC 404(3) or for impeachment under OEC 609(1)(a).

During the pretrial hearing to limit evidence, defense counsel also told the court the essence of defendant's proposed testimony:

> "* * * I believe it's very important for the defendant to get up to the stand and say where he was at the time and what he was doing and be able to state that he did not commit the crime."

The procedural question arises whether this is a sufficient record to preserve any error for our review. Can defense counsel rely on a pretrial ruling of the court or must counsel wait until trial and put his client on the stand to obtain a ruling during trial in order to protect his record? The defendant with a criminal record faces a serious dilemma. The defendant's problem is described by Professor McCormick as follows:

> "* * * If the accused is forced to admit that he has a

'record' of past convictions, particularly if the convictions are for crimes similar to the one on trial, there is an obvious danger that the jury, despite instructions, will give more heed to the past convictions as evidence that the accused is the kind of man who would commit the crime on charge, or even that he ought to be put away without too much concern with present guilt, than they will to the legitimate bearing of the past convictions on credibility. The accused, who has a 'record' but who thinks he has a defense to the present charge, is thus placed in a grievous dilemma. If he stays off the stand, his silence alone will prompt the jury to believe him guilty. If he elects to testify, his 'record' becomes provable to impeach him, and this again is likely to doom his defense. * * *" McCormick, Evidence 99, § 43 (3rd ed 1984).

■ We believe trial courts should rule on the admissibility of prior crime impeachment evidence as soon as possible after the issue is raised. It is only after a ruling on the admissibility of a conviction that the prosecutor and defense counsel can make an informed decision how to effectively try the case. The decision has a significant impact on what questions to ask the jurors during voir dire, what to say in opening statements and the questioning of witnesses. Whether the defendant takes the stand changes the entire complexion of the case. In discussing the procedure to be utilized in deciding when and which unlisted crimes to use in "false statement" crimes under OEC 609(1)(b), the legislative commentary makes the following recommendation:

"* * * Normally, the issue should be raised by motion *in limine,* as the court's ruling may have important tactical consequences at trial. * * * The Legislative Assembly intends that the trial court have full discretion in passing on any such motion."

The same procedure should be followed under OEC 609(1)(a) for the same reasons. Of course, depending on the circumstances, a trial judge may wish to withhold ruling on prior conviction evidence until he or she has heard all the trial testimony presented by both sides in order to effectively weigh the probative value of admitting the evidence against its prejudicial effect. *See, United States v. Oakes,* 565 F2d 170 (1st Cir 1977). However, this should be a rare occurrence, because in most cases the trial judge should be able to make this determination from an offer of proof in a pretrial motion to

limit the introduction of the prior crime impeachment evidence. We do not contemplate the necessity of a mini-trial for this decision. The prosecutor can merely tell the judge what evidence is expected to be presented and the defense counsel can do the same.[1] As the Oregon legislative commentary points out:

> "* * * The court need not take defendant's testimony to decide its importance. In the interests of judicial efficiency, the court may make this determination based upon the summary of the accused's testimony as presented by defense counsel. Additionally, the court may take into consideration other remarks made by respective counsel about the nature of the case, and evidence already introduced, if any."

It is not realistic or necessary for a defendant to have to wait until he is on the stand to find out whether he will be impeached with prior crime evidence. We agree with Judge Goodwin, writing for the Ninth Circuit in *United States v. Cook*, 608 F2d 1175, 1186 (9th Cir 1979), when he said that it is sufficient to protect the record in a criminal case for a defendant, by a statement of his attorney, to:

> "(1)   Establish on the record that he will in fact take the stand and testify if his challenged prior convictions are excluded; and

> "(2)   Sufficiently outline the nature of his testimony so that the trial court, and the reviewing court, can do the necessary balancing contemplated in Rule 609. The trial court can then articulate its reasons for ruling as it does in each case."[2]

In this case defense counsel did tell the court, "I guess what I would say first of all, with respect to—it's the intent of the defendant at this point to take the stand [if the prior

---

[1] The court in *United States v. Mahone*, 537 F2d 922, 929 (7th Cir 1976), noting that "[t]he hearing need not be extensive," suggested that the trial court "should require a brief recital by the government of the circumstances surrounding the admission of the evidence, and a statement of the date, nature and place of the conviction." In response, "[t]he defendant should be permitted to rebut the government's presentation, pointing out to the court the possible prejudicial effect to the defendant if the evidence is admitted." Such a procedure would protect the rights of the defendant without creating any undue burdens for the court, the defendant, or the government.

[2] Of course, despite good faith representations by counsel, a defendant will always be entitled to change his or her mind about taking the stand. *See* Kirkpatrick, Oregon Evidence 255 (1982).

conviction for rape would be held inadmissible as impeachment evidence]." Counsel then made the brief offer of proof previously mentioned.[3] The trial judge chose to rule at the time of the pretrial hearing that from what he had heard from the prosecution and the defense he would admit the prior crime evidence for impeachment purposes. The trial court chose to abide by that ruling throughout the trial by not reconsidering it and, therefore, the trial court and the parties were bound by that ruling.[4] The pretrial ruling is subject to our review. *See, State v. Foster, supra.*

In making his ruling, the trial judge referred to the legislative commentary to OEC 609(1)(a) and to the Court of Appeals case of *State v. Carden,* 58 Or App 655, 650 P2d 97 (1982). The court also made reference to the New York Court of Appeals case of *People v. Bennette,* 451 NYS2d 647, 56 NY2d 142, 436 NE2d 1249 (1982).

We turn first to the legislative commentary to OEC 609(1)(a). The commentary begins:

"The introductory phrase of the subsection states its purpose. The legitimate end of impeachment is not to show that a person who takes the stand is a 'bad' person, but to show that the person cannot be believed. [Citation omitted.] Not all crimes are equally relevant to this purpose * * *.

"Aside from the low probative value of some convictions, the divulgence of a criminal past often exposes a witness to jury prejudice. * * *"

The commentary then addresses the balancing test expressed in the rule that if the crime is a felony "the court

---

[3] Defense counsel stated:

"* * * I believe it's very important for the defendant to get up to the stand and say where he was at the time and what he was doing and be able to state that he did not commit the crime."

[4] On December 10, 1984, the Supreme Court of the United States decided *Luce v. United States,* 469 US ____, 105 S Ct 460, 83 L Ed 2d 443 (1984). *Luce* held that in order to raise and preserve for review the claim of improper impeachment with a prior conviction, under FRE 609a, a defendant must testify.

We respectfully disagree. We prefer the motion *in limine* practice suggested in our opinion, which is consistent with the commentary to the Oregon Evidence Code.

As we point out in this opinion, the decision to decide the impeachment issue after a motion in limine or to wait until the defendant testifies is discretionary with the trial court.

determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant." The commentary makes it clear that the balancing of the probative value against prejudice only applies in a criminal case, and then only on behalf of the defendant in a criminal case. After noting the federal commentary is silent on how to determine admissibility of a prior felony conviction when balancing the probative value of the evidence against its prejudicial effect, the Oregon legislative commentary states that the Legislative Assembly approves the federal four-factor balancing test developed by then Circuit Judge Warren Burger in *Gordon v. United States,* 383 F2d 936, 940-41 (DC Cir 1967). The commentary reads:

> "*The nature of the crime.* This factor requires the court to analyze the prior crime in terms of relevance to credibility. For example, a smuggling conviction is more probative than an assault. If the prior crime ranks high on a veracity scale, then this factor favors admissibility.

> "*Date of conviction and subsequent criminal history.* This factor requires the court to analyze the history of crime in terms of a present disposition to adhere to any norm, including that of telling the truth. For example, a conviction six months before trial is more probative than one that occurred six years before trial. However, a conviction six years earlier gains in relevance if the witness' subsequent record shows a pattern of continuing criminal activity.

> "*Similarity to crime charged.* This factor relates to prejudicial impact on the accused. If the elements of the prior conviction are similar to those of the crime charged, then analysis under this factor favors exclusion of the prior conviction. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those that are for the same or a similar crime. Inevitably there is pressure on lay jurors to use these as substantive evidence of guilt even though they are not admissible as such under OEC 404(3). As a general guide, these convictions should be used sparingly. *See, e.g., United States v. Bailey,* 426 F2d 1236 (DC Cir 1970) (excluding evidence of prior conviction for receiving stolen goods in trial for robbery).

> "*The importance of the defendant's testimony.* If the testimony of the accused is crucial to a fair determination of the issues, as it would be in an assault/self-defense case without independent witnesses, then this factor tends to favor exclusion. The more central the issue of credibility is to a fair

determination of guilt, the more desirable it is to encourage the accused to testify. * * *"

It must be remembered that the commentary is not an official part of the Oregon Evidence Code and was not approved by the entire legislature. Of course it provides highly useful background regarding each rule and guidance to courts and attorneys in interpreting these rules, but the commentary is not controlling upon this or any other court. In fact, the commentary, referring to a four-factor test contained in *Gordon v. United States, supra,* is partially in error. In *Gordon,* Judge Burger set forth five factors to be considered by trial courts in admitting evidence. In addition to the four factors listed, he added the fifth factor in stating that "the case had narrowed to the credibility of two persons—the accused and his accuser—and in those circumstances there was greater, not less, compelling reason for exploring all avenues which would shed light on which of the two witnesses is to be believed." 383 F2d at 941. Thus, under these circumstances, the fifth factor favors admission of a prior conviction. Judge Burger's five factors were summarized as follows in the subsequent case of *United States v. Mahone,* 537 F2d 922, 929 (7th Cir 1976):

"(1) The impeachment value of the prior crime.

"(2) The point in time of the conviction and the witness' subsequent history.

"(3) The similarity between the past crime and the charged crime.

"(4) The importance of the defendant's testimony.

"(5) The centrality of the credibility issue."

The Oregon commentary states: "The more central the issue of credibility is to a fair determination of guilt, the more desirable it is to encourage the accused to testify." Yet, Judge Burger stated in reference to the centrality of the credibility issue that the trial court in *Gordon* had acted properly in permitting the government to use prior conviction evidence to impeach the defendant. The Oregon commentary to OEC 609 mixed up Judge Burger's factors (4) and (5).[5]

---

[5] The fact that there was some confusion in writing the commentary is understandable. The legislative history reveals that this portion of the evidence code was the last revision made on the code and was a substantial compromise between the House version and the Senate version and was finally settled in a last-minute conference

Judge Gillette, writing for the Court of Appeals, noted this fifth factor in *Carden* by stating that while the defendant's testimony may be important under the facts of the case, which would militate against the admission of a prior conviction for impeachment, this importance of the defendant's testimony also makes the credibility of the defendant all the more important, a factor which argues in favor of admitting the prior conviction. The Court of Appeals did not purport "to resolve this conundrum fully." *State v. Carden, supra,* 58 Or App at 661.

The defendant, in his petition to this court, states that "appellate courts must exercise supervision over Rule 609 in order to insure uniformity and fairness." This is an admirable goal, and it would be legally nice if we could have symmetry and consistency in evidence law dealing with impeaching witnesses with prior crimes. Uniformity and consistency were options which were directly presented to the legislative assembly when it was adopting the Oregon Evidence Code. Both the House Judiciary Senate Justice Committees were advised that they should adopt a rule of consistency.[6]

---

committee. Legislative counsel to these committees were forced to work under tremendous time constraints to write out some commentary to explain the last-minute actions of the legislature.

[6] The co-chairman of the Oregon Evidence Revision Advisory Commission presented the following testimony to the Senate Justice Committee. He had made similar comments to the House Judiciary Committee:

"* * * [A]s to Rule 609, which is one of the most controversial areas as to impeachment of prior crimes, it seems that there are some of us that from an intellectually honest standpoint we'd like to have the impeachment limited to crimes relating to veracity traits, but in the real world what we should have should be something that would be easy to work. * * * It seems you have three alternatives: You have the Advisory Committee commentary * * * which admits all felonies and then misdemeanors involving false statements * * *, or we have the Federal Rule 609, which is a much more complicated system which will increase the cost of trials which I believe is a factor that has to be considered. I think the administration of trials should be kept as simple as possible * * *.

"* * * * *

"* * * [T]he Advisory Committee approach that is being suggested here—* * * on that committee was a Chief Justice of the Oregon Supreme Court, the Attorney General, * * * it had defense lawyers, it had plaintiff lawyers, and it was a real hammered-out compromise and it was acceptable to everybody. * * *

"Then we have the third proposal, which is the proposal that was submitted from the House which is a very complicated list * * *. I would strongly recommend that if it's a choice between the three that you take the Advisory Committee * * * rule that will be simply administered and leave perhaps for a future legislative

The so-called purist or intellectual approach, which allows only crimes involving false statement for impeachment, was recommended to the legislature by the Joint Interim Committee on the Judiciary. That proposal and commentary read as follows:

## PROPOSAL

"(1) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime involved dishonesty or false statement."

## COMMENTARY

"The Judiciary Committee abandoned the traditional approach to impeachment by prior crimes which allows impeachment by any prior felony conviction. A majority of the committee felt that the distinction between felonies and misdemeanors was arbitrary and that the mere fact that a crime is designated a felony does not make conviction of that crime necessarily relevant to the credibility of a witness. Thus, the committee proposes that prior convictions be admitted for purposes of impeaching a witness' credibility only if the conviction was for a crime - felony or misdemeanor - involving dishonesty or false statement. Conviction of such crimes is directly and obviously relevant to the propensity of the witness to testify truthfully.

" 'Crimes involving dishonesty or false statement' means crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement or false pretense, or any other offense, in the nature of crimen falsi the commission of which involves some element of untruthfulness, deceit or falsification bearing on the witness' propensity to testify truthfully. * * *"

The other option offered to the legislature was to allow evidence of any felony crime. That was the recommendation of the Oregon Evidence Revision Advisory Commission

---

session refinements in the area of impeachment, because it is a step, it is compromise on both sides, and I know that it's not my philosophical preference— my philosophical preference is strictly intellectual honesty, keep it to crimes involving false statement * * *." Testimony of Hon. Richard L. Unis before the Senate Judiciary Committee, April 23, 1981.

after a seven-year effort in preparing the code for the legislature. It read in relevant part as follows:

## PROPOSAL

"(1) For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime:

"(a) Was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted; or

"(b) Involved false statement, regardless of the punishment."

## COMMENTARY

"A felony conviction may be used to impeach credibility because the magnitude of the violation of societal standards indicated by the conviction makes it relevant to the credibility of the witness as a testifier. * * *"

The legislature was specifically warned that if it followed the federal rule, FRE 609, as it eventually did, there would not be uniformity in the law, there would not be symmetry in the law, and most certainly there would be inconsistency in the law. The Judiciary Committees were forewarned that lawyers and litigants would receive one ruling in one courtroom and an inconsistent ruling involving the same or similar evidence in another courtroom.[7] Nevertheless,

---

[7] Another member of the Oregon Evidence Revision Advisory Commission testified:

"JONES, J.: In respect to 609, it seems to me that [it] is just going to be a mess to adjudicate and if you are not in sympathy with the so-called academic or intellectual position of restricting impeachment to crimes that are relevant to credibility, then you ought to go to the Advisory Committee proposal, which is very clean and understandable—any felony crime, and any misdemeanor involving false statement.

"Federal Rule 609 is a mess because it leaves discretion with the trial judge, so let's take the [murder] case you just heard—this murderer let's say goes out and commits another murder—does that prior murder conviction—does the prejudicial effect outweigh the probative value? One judge will say 'yes,' one judge will say 'no.' You are going to get one ruling in one court versus another * * *.

"* * * * *

"SEN. WYERS: The federal rule doesn't really speak to credibility though,

the legislature opted for a rule of inconsistency by adopting FRE 609. FRE 609 represented a political compromise of one of the most hotly contested provisions when the federal rules were considered and adopted by Congress. *See, United States v. Smith,* 551 F2d 348, 360-61 (DC Cir 1976).

Irving Younger said in his article *Three Essays on Character and Credibility Under the Federal Rules of Evidence,* 5 Hofstra L Rev 7, 11-12 (1976):

"* * * [I]n * * * dealing with impeachment-by-conviction, * * * [t]he Federal Rules of Evidence struck a political compromise.

"On one side were those who argued for unlimited use of convictions to impeach. On the other were those who urged strict limits. To secure the votes of both sides, something was given to each. Exception was piled upon qualification to please Marcus and qualification upon exception to please Lucius, until Rule 609 had been tortured into a mockery * * *."

We have taken review of this case, *State v. Simmonds,* 298 Or 356, 692 P2d 577 (1984), and *State v. Sims,* 298 Or 360, 692 P2d 575 (1984), in an attempt to give some guidance to trial courts how to decide which prior convictions to admit or exclude for witness impeachment, but in no way do we pretend that these opinions will bring uniformity to this area of the law of evidence. Only legislative action can bring about that result.

We now turn to the record in this case to observe how the trial judge tackled this difficult legal problem of making

---

does it? It talks about prejudicial effect.

"JONES, J.: The [Congress] went through the same agonies that your committee has gone through.

"SEN. WYERS: What kind of caselaw experience have they had with it?

"JONES, J.: A mess. * * * You have to have hearings on every case and then you decide whether the prejudicial effect outweighs the probative value * * *. What about multiple rapes? Some judge is going to think three prior rapes are very relevant to credibility, another judge says that's just relevant to the person's a bad character and not admissible. And my guess would be that if I had a secret ballot of the members of this committee, that you would have quite a divergence of feeling also.

"SEN. WYERS: You wouldn't have to have a secret ballot to find that out." Testimony of Hon. Robert E. Jones before the Senate Justice Committee, April 23, 1981.

findings under the factors set forth in *Gordon v. United States, supra.* Although not stated in the following sequence, the trial judge made these comments as to the five factors:

(1) The impeachment value of the crime: "* * * [F]irst of all, certainly the nature of the crime being the—in terms of credibility, the analysis set forth in the New York State case of *[People] v. Bennette* has some appeal to it." In *People v. Bennette, supra,* New York's highest court said in a robbery, burglary and assault case that the trial court did not abuse its discretion in allowing the prosecutor to impeach the credibility of the defendant with a prior conviction of sodomy of an eight-year-old girl. The New York court reasoned:

"The defendant's conviction for sodomy was not irrelevant to the question of his veracity. Although sodomy is not the type of crime which necessarily involves an act of dishonesty—like perjury, fraud, bribery and similar offenses—it may, as the trial court recognized, indicate a willingness or disposition by the defendant to voluntarily place 'advancement of his individual self-interest ahead of principle or of the interests of society' and thus 'may be relevant to suggest his readiness to do so again on the witness stand' (*People v. Sandoval, supra,* 34 N.Y.2d at p. 377, 356 N.Y.S.2d 849, 314 N.E.2d 413). Of course an impulsive or uncontrollable act may have little or no relevance to a defendant's credibility; but * * * [a] person ruthless enough to sexually exploit a child may well disregard an oath and resort to perjury if he perceives that to be in his self-interest." *People v. Bennette, supra,* 451 NYS2d at 649.

(2) The date of the prior crime:

"* * * I think that when you add together with [factor (1)] what I understand to be the circumstances here, that the defendant was released from custody within, I think four months or five months of the time he is charged with the commission of this new offense, we have an offense that is committed close in time to a release, which is one of the things that is talked about in the second part here. The date of conviction and criminal history. * * *"

(3) The similarity between the past crime and the crime charged:

"* * * The similarity of the crime charged certainly is one that I think clearly falls into the category of what the Legislature had in mind when they were concerned about the

use of the conviction for other than impeachment purposes. * * *"

We note that the present case was not simply a prior rape conviction being offered in a subsequent rape trial. The present case also involved charges of kidnapping, sodomy and robbery.

(4) The importance of defendant's testimony: The court heard defense counsel on this issue before ruling on the motion. Defense counsel, as previously mentioned, merely asserted:

"* * * I believe it's very important for the defendant to get up to the stand and say where he was at the time and what he was doing and be able to state that he did not commit the crime."

He then asked the court to rule on his motion based on what counsel had told the court. The court made no direct comment in response to defense counsel's statement, but did discuss factor (5).

(5) The centrality of the credibility issue:

"What we are being asked to do here is to exclude a conviction that * * * jurors could look at in this case, almost no matter what the conviction might be and say that he certainly has some motive to lie if he is, in fact, guilty of the offenses sitting there on parole and is here on the witness stand charged with the same thing he just got out of prison on. Seems to me there is certainly some probative value in a jury knowing that to assess his credibility in this case, otherwise you have a defendant sitting here with all the possible consequences that this conviction can bring. * * *"

■     In evaluating the trial court's ruling, we first note that OEC 609(1) calls for the trial court to exercise discretion and in doing so to apply the balancing tests set forth in *Gordon v. United States, supra,* 383 F2d at 940-41.[8]

---

[8] Although the court in *Gordon* held the opposite, federal cases decided after the adoption of FRE 609 place the burden of persuasion on the prosecution that the prior conviction is admissible. *See, e.g., United States v. Hendershot,* 614 F2d 648, 652 (9th Cir 1980) (Rule 609(a)(1) "requires that the prosecution bear the burden of establishing that the probative value of admitting a prior conviction * * * outweighs its prejudicial effect to the defendant."); *United States v. Smith,* 551 F2d 348, 360 (DC Cir 1976) ("The prosecution now must bear the burden of establishing that prior conviction evidence should be admitted."); *United States v. Paige,* 464 F Supp 99, 100

What is discretion? As Maurice Rosenberg observes in his article *The Discretion of the Trial Judge and Its Implications,* 4 Trial Judges Journal No. 3, 4 (July 1965), "discretion is a very slippery concept." He says:

"*** It occurs in a hundred forms in the trial judge's day-to-day work, bobbing up in every state and in every court. Yet the legal literature does not analyze, define or account for it in any coherent fashion. Neither do the decided cases. They bandy the terms 'discretion' and 'abuse of discretion' incessantly but not helpfully. Indeed, it is hard to think of a subject of comparable sweep in the law that has suffered as much neglect. This is doubly remarkable because discretion is an exciting and challenging concept, beginning as it does where ordinary legal trials end. It behaves like a wild stallion in our usually well domesticated barnyard. Isn't it about time it was tamed?"

■ Just as we do not pretend in this opinion to bring uniformity to evidence law concerning prior convictions, we also do not pretend to tame the subject of discretion. The legislature could not decide on a fixed rule so it left the discretionary call to the experience of the trial judge. Therefore, whether we agree with the trial judge or not, if he was acting within the sphere of his discretion and considered the suggested factors, we will not overturn his ruling. We, therefore, restrict our review to whether the trial judge properly exercised his discretion.

It is clear that the trial judge faithfully attempted to follow the outline of the five factors set forth in *Gordon v. United States, supra.* However, we note specific variances in his rulings from the commentary:

■ As to factor (1), the impeachment value of the prior crime, the commentary mentioned that a smuggling conviction is more probative than an assault. In this case, the prior conviction was for rape—an assaultive crime. This crime rates low on a veracity scale and application of this factor favors

---

(ED Pa 1978) ("It is the government's burden to establish that the probative value of the prior conviction's use outweighs its prejudicial effect."); *United States v. Brewer,* 451 F Supp 50, 51 (ED Tenn 1978) (Rule 609(a)(1) "places upon the government the burden of persuading the Court that the convictions are admissible.").

We agree the burden of persuasion for this type of evidence rests properly with the offering party.

inadmissibility. *See, United States v. Larsen,* 596 F2d 347 (9th Cir 1979).

As to factor (2), the date of conviction, there is no dispute that the defendant's prior crime was recent, and in fact, he had been paroled only months before the alleged present crime. This factor weighs in favor of admissibility.

As to factor (3), the similarity of the crimes, the commentary states:

> "Aside from the low probative value of some convictions, the divulgence of a criminal past often exposes a witness to jury prejudice. In one recent survey 98% of the attorneys, and 43% of the judges, indicated their belief that a jury is unable to follow an instruction to consider prior conviction evidence only for the purpose of evaluating credibility. 'To Take the Stand or Not to Take the Stand: The Dilemma of the Defendant with a Criminal Record,' in 4 Colum J Law and Soc Prob 213 (1968). To inform the jury in a rape case that the defendant has a prior rape conviction, and then to instruct the jury to consider the conviction only in evaluating the defendant's credibility, is to recommend 'a mental gymnastic which is beyond, not only their power, but anybody else.' *Nash v. United States,* 54 F2d 106, 107 (2d Cir 1932) (L. Hand, J.)."

Clearly, application of factor (3) weighs heavily against the admissibility of a similar crime, particularly a prior rape conviction used in a subsequent trial involving a charge of rape along with other charges of sodomy, kidnapping and robbery. Nevertheless, the legislature did not create a per se exclusion rule, for to do so as Gillette, J., stated in *Carden,* 58 Or App at 661, "would lead to the unreasonable result of treating more favorably a defendant who has committed the type of crime charged more than once than one whose earlier crimes were different."[9] We conclude that the similarity of the

---

[9] Some federal courts interpreting the identical language of OEC 609 found in FRE 609 have held the trial court properly exercised its discretion, *see, e.g., United States v. Callison,* 577 F2d 53 (8th Cir), *cert den* 439 US 873 (1978) (trial for bank robbery, impeachment allowed by use of prior conviction for bank robbery); *United States v. Booker,* 706 F2d 869 (9th Cir), *cert den* 104 S Ct 283 (1983) (prosecution for possession of firearm by convicted felon properly impeached with previous conviction for violation of firearms statutes); *United States v. Harris,* 720 F2d 1259 (11th Cir 1983) (previous drug conspiracy and drug possession convictions admissible against defendant charged with conspiracy to possess heroin and cocaine); *United States v. Fountain,* 642 F2d 1083 (7th Cir 1981) (prior conviction for murder properly admitted to impeach prisoner accused of killing a fellow prisoner); *United States v. Shaw,* 701 F2d 367 (5th Cir 1983) (prosecution for murder, no error in admission of prior

prior crime to the present crime by itself does not require exclusion of the evidence. We do caution that for future "similar crime" cases under factor (3) the prosecutor be limited to merely asking the defendant if he has been convicted of a felony without specifying the type of crime so as to reduce the chances of the jury interpreting the cross-examination as an attack on character as opposed to its proper limits as an attack on credibility. *See, United States v. Fay,* 668 F2d 375 (8th Cir 1981); *United States v. Boyce,* 611 F2d 530, 530 n 1 (9th Cir 1979).

██    We assume, as did the Joint Interim Committee on the Judiciary, that the fact that a witness has been convicted of *any* felony within the prescribed time limits has some relevancy to credibility even though the crime might rate low on the credibility scale.[10]

██    We recognize that factors (4) and (5) relating to the importance of the testimony to the defendant and the impeachment evidence to the state usually offset each other in a criminal case and, therefore, do not require comments or findings of the trial judge[11] as required by factors (1), (2) and (3).

---

convictions for rape and assault to impeach defendant); *United States v. Brewer,* 451 F Supp 50 (ED Tenn 1978) (prosecution for kidnapping and interstate transport of stolen car, prior conviction for rape, aggravated assault and assault with a deadly weapon admissible for impeachment).

[10] Referring to its earlier approach in *Gordon v. United States,* 383 F2d 936 (DC Cir 1967), the United States Court of Appeals upheld the admissibility of a prior conviction for robbery, stating:

"*** In so concluding, we recognize the statement in *Gordon,* 383 F.2d at 940, that 'acts of violence *** generally have little or no direct bearing on honesty and veracity.' But to say that violent crimes have no 'direct bearing' on veracity is not to say that they have *no* bearing. Moreover, any statement that felonies involving violence have no bearing on veracity at all would be inconsistent with admitting convictions for these felonies unless the prejudicial effect 'far outweighs' the probative value.

"We hold that *** all convictions that meet the Rule 609(a)(1) threshold are at least somewhat probative of credibility." *United States v. Lipscomb,* 702 F2d 1049, 1058 n 36 (DC Cir 1983).

[11] Among the problems inherent in the use of the fourth and fifth factors are some significant conceptual problems. Professor Surratt, in his article *Prior-Conviction Impeachment Under the Federal Rules of Evidence: A Suggested Approach to Applying the 'Balancing' Provision of Rule 609(a),* 31 Syracuse L Rev 907, 942 (1980), says:

"*** One problem is that these factors do not relate to probative value or prejudicial impact in the same way as the first three factors. To appreciate this difference, one must go back to the conceptual underpinnings of the rule itself. In

As one of these factors increases in importance in a particular case, so does the other. For example, if a case boils down to a "swearing match" between the defendant and the victim—a situation in which only one of the witnesses can be telling the truth—both sides can make a strong argument under factors (4) and (5). In the present case the prosecution, relying on the fifth factor, made a strong argument that it was of critical importance that the jury be exposed to every available item of evidence that was relevant on the issue of the defendant's credibility as a witness, including evidence of the defendant's prior criminal convictions. The defendant, relying on the fourth factor, made an argument that it was important that the defendant be able to take the stand and relate his side of the story to the jury, undeterred by the prospect of prior-conviction impeachment. The prosecution in this case presented evidence that the defendant was unequivocally identified by the victim, defendant's white van was seen near the crime scene, and defendant made incriminating statements to the police in the form of an alleged contrived alibi. The prosecution presented to the jury the defendant's version of what happened through the testimony of an officer who related to the jury defendant's denial of guilt for the rape as well as his alibi. The testimony was consistent with defense counsel's offer of proof. One of defendant's own witnesses testified that the defendant suggested that the witness commit perjury in an effort to establish the alibi defense. In sum, the case would not have become just a one-on-one swearing contest if the defendant testified. What the defense lawyer said the defendant would say in his offer of proof was presented to the jury by other witnesses.

The trial judge did not have an opportunity to state

---

adopting rule 609(a)(1), Congress was balancing two conflicting interests: the interest of the defendant in being able to tell his story to the jury, and the interest of the prosecution in being able to convey to the jury information concerning the defendant's credibility as a witness. In effect, Congress decided that, considered in the abstract, those two interests are roughly equal. Only when the probative value of impeaching evidence is increased or decreased, or when the prejudical effect of impeaching evidence is increased or decreased, does the balance change. The first three factors in the five-factor approach have a direct relationship to either probative value (the first and second factors) or prejudicial effect (the third factor). Thus, those factors do change the balance in particular cases. But the fourth and fifth factors do not relate directly to either probative value or prejudicial effect. These factors embody general concepts that are, in actuality, merely restatements of the conflicting interests that Congress balanced in adopting the rule." (Footnote omitted.)

his evaluation of the testimony presented in the case because the testimony took place during the trial, after his ruling on the pretrial motion. After the pretrial motion and the offers of proof of what both sides expected the trial evidence to be, the trial judge did, however, stress the importance of the impeachment testimony in the event the defendant testified. We infer from his ultimate conclusion to admit the proffered prior crime evidence that he considered factor (5) of greater importance than factor (4).

■■■ Our examination of the record in this case reveals that the trial judge, following OEC 609 and its commentary, held the pretrial hearing on the record, made explicit findings on each of the relevant factors discussed in this opinion and stated his reasons for the findings on the record as they related to the proposed evidence in the trial. He finally concluded that the probative value of the prior conviction outweighed its prejudicial effect. This was a discretionary call based on the trial judge's evaluation of all the factors listed in *Gordon v. United States, supra.* Although we may disagree with the trial judge's conclusion, we will not disturb it and we affirm his ruling on appeal.

The Court of Appeals is affirmed.