Argued and submitted April 4, reversed; judgment of circuit court reinstated

STATE OF OREGON,
*Petitioner on Review,*

*v.*

STEPHEN MICHAEL KESSLER,
*Respondent on Review.*

(TC C82-07-36517; CA A27111; SC S30237)

686 P2d 345

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause and filed the petition and briefs for Petitioner on Review. With him on the briefs were Dave Frohnmayer, Attorney General and James E. Mountain, Jr., Solicitor General, Salem.

Helen I. Bloch, Salem, argued the cause and filed petition for Respondent on Review. With her on the briefs was Gary D. Babcock, Public Defender for Oregon, Salem.

LINDE, J.

## LINDE, J.

Both parties seek review of a decision of the Court of Appeals which held that the trial court imposed more separate sentences on defendant than were authorized for the offenses to which he pleaded guilty.

We take the statement of the case from the opinion below:

"On July 25, 1982, six inmates, including defendant, excaped from Rocky Butte Jail. During the course of the escape, four lay ministers were brought to an area controlled by the escapees, made to disrobe and were then placed in a cell. Following that, defendant pointed a gun at two correctional officers and forced them to escort the inmate group to the jail control center. Defendant then escaped."

"Defendant pled guilty to, among other charges, four counts of second degree kidnapping for the episode involving the lay ministers and two counts of first degree kidnapping for the episode involving the correctional officers. The trial court imposed four 10-year maximum sentences for the second degree kidnapping convictions, each with a 5-year minimum sentence, and one 20-year maximum sentence, with a 10-year minimum and one 10-year maximum sentence with a 5-year minimum for the first degree kidnapping convictions, all to be served consecutively."

*State v. Kessler,* 65 Or App 380, 382, 671 P2d 749 (1983). The Court of Appeals continued that it felt compelled by this court's decision in *State v. Linthwaite,* 295 Or 162, 665 P2d 863 (1983), to "merge" the four second degree kidnapping convictions "into one sentence" and to "merge" the two first degree kidnapping convictions "into one sentence," while protesting "in the strongest possible terms" that it disagreed with the "rule" it felt forced to follow. *State v. Kessler, supra,* 65 Or App 380 at 382 and n 1. Because neither *Linthwaite* nor principles stated elsewhere preclude multiple sentences in this case, we reverse.

### I.

■ At the outset, we note once again that the issue of multiple sentences differs from the issue of multiple statutory violations, and that these issues are difficult to keep separate when the single word "merger" is used to describe both. *See State v. Linthwaite, supra,* 295 Or at 174, n 11, *citing State v.*

*Cloutier,* 286 Or 579, 586, 596 P2d 1278 (1979). "Merger," of course, is not a statutory word but only a term of convenience, and it loses its convenience when it obscures more than it describes. One offense may be said to be "merged" in another in the sense in which a completed crime includes and "merges" the attempt to commit it, or a murder includes and "merges" the assault that proved fatal or the felony that made an unintended homicide a murder. *See, e.g. State v. Fish,* 282 Or 53, 577 P2d 500 (1978) (conviction of felony murder merges the felony of burglary); *State v. Harris,* 287 Or 335, 340, 599 P2d 456 (1979) (conviction of sodomy merges conviction of sexual abuse); *State v. Roach,* 271 Or 764, 767, 534 P2d 508 (1975) (conviction of possessing a stolen motor vehicle merges into conviction of robbery involving the same vehicle).[1] But when "merger" is carried into the context of sentencing, it misdirects attention to the point that the defendant committed multiple offenses when that point is not at issue at the sentencing stage. Such usage risks the confusion that appears to have happened in this case when the Court of Appeals stated: *"Linthwaite* does not require merging the sentence for the first degree kidnapping with the sentence for the second degree kidnapping, because those were different crimes with different elements of proof." *State v. Kessler, supra,* 65 Or App at 382 n 2. But the question of cumulative sentences cannot be decided by asking whether different crimes were committed. It is only when a defendant has validly been convicted of separate offenses, when there is no "merger," that a question can arise whether the relevant laws contemplate a single sentence or cumulative sentences for such multiple offenses.

## II.

■     *State v. Linthwaite, supra,* was the latest in a series of cases involving the question of cumulative sentencing for offenses that do not merge. *See State v. Garcia,* 288 Or 413, 605 P2d 671 (1980); *State v. Harris,* 287 Or 335, 599 P2d 456 (1979); *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979); *State v. Welch,* 264 Or 388, 505 P2d 910 (1973); *State v.*

---

[1] *See also* Slader, *The Lesson of Merger's Lost Decade,* 18 Willamette L Rev 219, 221-224 (1982), reviewing the cases and suggesting the use of alternative words such as "amalgamation." Another possible synonym is "consolidation." What matters is not the word but the recognition that under present law charges that may be separate, i.e. not merged, for some purposes do not necessarily support multiple sentences.

*Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971). The disposition of offenders is as much a matter of legislative policy, within constitutional limits, as the definition of offenses. *State v. Cloutier, supra,* 286 Or at 583-587. In the absence of explicit legislation or legislative history on this subject,[2] the court therefore has sought to discern the apparent or most probable legislative policy toward cumulative or consecutive sentences. *See State v. Linthwaite, supra,* 295 Or at 177-179; *State v. Welch,* 264 Or 392-394, *citing Bell v. United States,* 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955). The answers have not been and cannot be stated as a "rule" without regard to the statutory offenses involved.

It is not necessary to review here all that was said in the cited decisions and to distinguish them from one another. One factual element apparently led the Court of Appeals to conclude that *State v. Linthwaite, supra,* allowed only one sentence for the second degree kidnapping of the four lay ministers and one sentence for the first degree kidnapping of the two corrections officers. This factual element is that *Linthwaite* also involved a defendant's conduct directed against several individuals.

In *Linthwaite,* the defendant brandished a knife, among other violent acts, at four persons. He was convicted and sentenced on a total of 14 separate counts, including five counts of "Recklessly Endangering," two counts of "Menacing," four counts of "Attempting to Use a Dangerous Weapon," two counts of "Criminal Mischief II," and "Reckless Driving."[3] This court held that only one sentence was proper for the defendant's attempt to use a dangerous weapon.

---

[2] Only the imposition of consecutive sentences upon multiple charges in a single episode creates a practical problem of inexplicit legislation. Doubts whether multiple sentences represent legislative penal policy arise when the elements constituting the additional offense bear no relation to a corresponding greater criminality of the offender.

This court has refrained from reexamining the question of consecutive sentences while awaiting legislative clarification. A bill covering such issues, HB 2087, Or Leg Assemb, Reg Sess (1983), was added as amendments by the House of Representatives to SB 731. However, SB 731 did not reach final Senate action before adjournment.

[3] The jury actually found Linthwaite guilty of four counts of "Menacing," although only two were charged. *State v. Linthwaite,* 295 Or 162, 165 n 4, 665 P2d 863 (1983).

The issues in *Linthwaite* were complicated by the large number of charges and by defendant's changed articulation of his claim, matters that occupied much of the court's opinion. Both in the trial court and in the Court of Appeals, defendant argued that ORS 166.220(1), the statute under which that crime was charged, did not require the existence of a victim, so that the number of persons toward whom he brandished the knife could not turn his conduct into four separate crimes. This court interpreted ORS 166.220(1) as implying that the forbidden attempt was to use a dangerous weapon against another person. We then rejected an argument by the state that ORS 131.505(3), which defines conduct against several victims as separate offenses for purposes of former jeopardy, also represents a legislative policy of cumulative sentencing. *State v. Linthwaite, supra,* 295 Or at 178-179.

This holding moved the Court of Appeals in the present case to write: "Whatever view the Supreme Court may take of the matter, we do not require some separate, express legislative intent that there be as many sentences as victims. For our part, the legislature's forbidding of the acts in question suffices." *State v. Kessler, supra,* 65 Or App at 382, n 1. The court's protest is misplaced. Nothing in *Linthwaite* stated that there cannot be multiple sentences for offenses against several victims in the absence of "express legislative intent" to that effect. *Linthwaite* merely stated that the statute on former jeopardy, ORS 131.505(3), did not address the question of cumulative sentencing. That question, as already noted, by definition only arises when there are valid convictions for more than one offense. And without express statutory guidance, a court must assess the implicit policy toward that question as best it can.

The major element in assessing whether multiple statutory violations were meant to carry cumulative punishment is whether they were committed in the course of a single criminal episode joined in time, place and circumstances and directed toward a single criminal objective. *See State v. Cloutier, supra,* 286 Or at 595 (drawing on ORS 131.515(2)). There the court noted that the test of a single criminal objective is no panacea. People have goals for the long, medium, or short term, and the objective of the immediate act often is pursued as a step toward a more distant goal. One may

have fully achieved the immediate goal of the particular offense committed toward a victim although one has not gained one's wider objective.[4] 286 Or at 583. *Cloutier* also drew attention to the problem of multiple victims, pointing out reasons why an overly simple formula would not reflect the dissimilarities between situations that intentionally or unexpectedly involve more than one victim.[5] The presence and sometimes the identity of the victim may be integral to the criminal objective, or it may be an incidental and undesired circumstance. 286 Or at 598-599.

■ The presence or absence of several victims therefore is not conclusive on the question of cumulative sentences. It is not necessarily true that a continuous sequence of criminal acts directed at a single victim can lead to only one sentence, *see State v. Garcia, supra,* nor that an offense involving more than one victim always does so.[6] *Linthwaite* is an example when it did not.

In *Linthwaite,* the Court of Appeals itself held that the convictions of "Menacing" and "Recklessly Endangering" should be "merged for sentencing" with the convictions for "Attempting to Use a Dangerous Weapon" with respect to each individual victim. *State v. Linthwaite,* 52 Or App 511, 521 and n 11, 628 P2d 1250 (1981). The court was not deflected from that holding simply by the fact that the legislature had separately forbidden the acts in question. Judge Van Hoomissen wrote: "Our analysis of the question leads us to the conclusion that the legislature could not have intended the result reached in this case." 52 Or at 521. This court approved that conclusion. *State v. Linthwaite, supra,* 295 Or at 179. We

---

[4] Moreover, crimes that do not involve intent have no criminal objective at all.

[5] "These span events of such diverse penological significance as the traffic offense that fortuitously results in the death of many instead of a single occupant of another vehicle, and the calculated decision of a robber to empty not only the cash register but also the purses of the individual employees or guests of the establishment." *State v. Cloutier,* 286 Or 579, 598, 596 P2d 1278 (1979). A formula based simply on finding more than one victim may seem workable when one thinks only of offenses involving aggressive conduct or personal injuries, but it would produce unexpected and probably unintended results in many property offenses involving multiple owners.

[6] The present defendant, apparently picking up a suggestion from the Court of Appeals opinion in *State v. Linthwaite,* 52 Or App 511, 529, 628 P2d 1250 (1981) argued that the state is always the sole legal victim in a criminal case. Obviously this is not the significance of "victims" in legislative policy, as ORS 131.505(3), discussed above, shows.

differed from the majority of the Court of Appeals, which was divided on the issue, as to the significance to be attached to the presence of more than one victim under the circumstances of *Linthwaite*.

The kidnapping of several victims in the present case was no unplanned accident, immaterial to the defendant's objective. *Linthwaite* might be analogous if, for instance, the charge were that someone unsuccessfully attempted to hijack a vehicle without caring whether it was occupied by one or several persons. If the vehicle in fact contained four persons, *Linthwaite* suggests that there could be only one sentence for attempted kidnapping, even if there might be several separate charges. This situation does not resemble the facts in the present case, however.

Because defendant in this case pleaded guilty, the facts of the kidnapping appear in a presentence report instead of a trial record, but they are not disputed. In the course of a group escape from the Rocky Butte Jail, a corrections officer was forced at gunpoint to cooperate with the escaping prisoners. First one and then three additional lay ministers present at the jail were summoned, forced to give their clothing to the prisoners, and were then locked up in a cell. These were the four counts of kidnapping in the second degree. The two first degree kidnapping counts charged that two corrections officers were used as hostages.[7] These events also happened in successive stages of the escape.

In this sequence of events, the fact that the criminal conduct involved multiple victims was no casual coincidence. Each of the civilian victims was summoned for a purpose, to obtain his clothing for one of the prisoners. Each was locked up in order to prevent interference with the escape. This kidnapping episode achieved its intermediate object in the larger scheme toward the ultimate objective of escape. Thereafter, first one and then the other corrections officer was taken hostage. In *Linthwaite*, defendant in the course of an unplanned confrontation waved or brandished a knife at four persons. No one was injured, and there was no reason to think

---

[7] The degrees of kidnapping differ insofar as first degree kidnapping involves the additional element of a purpose to compel a person to pay or deliver money or property as ransom; to hold the victim as a shield or hostage; or to terrorize the victim or another person. ORS 163.235.

that it mattered to the defendant or to his objective who or how many persons were on the scene. The role of kidnapping in this case is closer to that in *State v. Garcia, supra,* which sustained a separate sentence for a kidnapping preceding a series of sex offenses in the same episode, than it is to *Linthwaite.*[8]

■ The Court of Appeals misconceived its role in appeals from multiple sentences when it thought that *Linthwaite* provided a single rule for all cases involving several victims in a single criminal episode. Judge Richardson correctly observed in *State v. Linthwaite:*

> "[The Supreme Court] in *Clouthier* did not attempt to establish conclusive guidelines for the penal disposition in all 'multiple offender' situations, and it expressly left to this court the task of developing 'criteria for multiple convictions and sentencing' in situations involving 'the commission of offenses against several victims in a single criminal act or episode.' "[9]

*State v. Linthwaite, supra,* 52 Or App at 530 (Richardson, J., dissenting). Apart from that misconception and because the sentences were made consecutive, we might remand this case

---

[8] This case also differs from *Bell v. United States,* 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955), cited approvingly in *State v. Welch,* 264 Or 388, 505 P2d 910 (1973), and by defendant here. *Bell* involved separate sentences under the Mann Act, 18 USC § 2421 (1910), for the interstate transportation of two women for purposes of prostitution. The United States Supreme Court doubted that Congress meant a single act of transportation to be a separate punishable unit of crime for each woman so transported. The Supreme Court might not have reached the same result if the women had been taken across the border one at a time, or if they had been kidnapped. The distinction bween the Mann Act offense and kidnapping suggests the importance of examining the issue for one statutory offense at a time.

[9] Judge Richardson continued:

> "[I] do not agree [that the language ine *Cloutier*] is dicta which this court is free to disregard. Given the present scheme of Oregon's appellate system, one of the principal roles of the Supreme Court is to resolve issues of law which go beyond the narrow issues which *require* decision in particular cases."

52 Or App at 533. What *Cloutier* said was that in the sentence review assigned to the Court of Appeals by ORS 183.040 and ORS 183.050, Or Laws 1977, ch 372 "places heavy reliance on presentence reports, on trial court articulation of reasons in sentencing, on appellate review of sentences even within legally permissible limits, and on adoption of standards for parole decisions as means to compel principled analysis and to reduce disparity in the disposition of offenders at each stage of the process." *State v. Cloutier, supra,* 286 Or at 592 (footnote omitted). "We leave it to the Court of Appeals in the first instance to develop criteria for multiple convictions and sentences in such cases under ORS 183.040 and 138.050, as stated above." 286 Or at 599.

to the Court of Appeals to exercise its sentence review under ORS 138.050, if that issue had been raised. *See State v. Cloutier, supra,* 286 Or at 592-593. Our examination of the briefs, however, show only one other issue presented to the Court of Appeals in addition to defendant's claim of "merger" (either of offenses or of sentencing) under the decisions discussed above. That issue, brought before this court by defendant's petition for review, involved the treatment by the Court of Appeals of petitioner's attack on the legality of mandatory minimum sentences. That issue was mooted by this court's subsequent decision concerning such sentences. *State v. Turner,* 296 Or 451, 676 P2d 873 (1984); *State v. Brown,* 296 Or 461, 676 P2d 877 (1984).

We therefore reverse the decision of the Court of Appeals and reinstate the judgment of the circuit court.