Argued and submitted October 24, 1983, affirmed December 19, 1984, reconsideration denied February 8, petition for review denied February 26, 1985 (298 Or 773)

# STATE OF OREGON,
*Respondent,*

*v.*

# CALVIN KYLES,
*Appellant.*

## (C 82-09-37174; CA A27387)

692 P2d 706

J. Marvin Kuhn, Chief Deputy Public Defender, Salem,

argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

VAN HOOMISSEN, J.

Richardson, J., dissenting.

## VAN HOOMISSEN, J.

Defendant appeals his jury convictions of burglary in the first degree and two counts of robbery in the first degree. He contends that the trial court erred in ruling that evidence of his prior convictions was admissible at trial for impeachment purposes, in imposing cumulative sentences for multiple convictions and in imposing a minimum sentence. We affirm.

Defendant's convictions stem from a nighttime break-in of the home of an elderly couple, the Olsons. After entering their home through a bathroom window, defendant first stole money from a wallet which he found in the living room. He proceeded to Mrs. Olson's bedroom, where he threatened her with a knife and mace and robbed her of jewelry and money. Then he took her to Mr. Olson's bedroom where, under threat of cutting Mrs. Olson with the knife, he robbed him of jewelry. Defendant wore a mask; the Olsons could not identify him. However, the police found his fingerprints in the home and a pawnbroker identified him as the person from whom he had purchased jewelry stolen from the Olsons.

Defendant timely moved for an order preventing the state from offering impeachment evidence at trial consisting of his prior convictions of burglary and robbery. He argued that its prejudicial effect outweighed its probative value. He contends that the trial court's denial of his motion was error.[1]

---

[1] The trial court stated:

"* * * Applying the criteria that is contained in the commentary to Rule 609-A, and discussed by the Oregon Court of Appeals in State vs. Carden, [58 Or App 655, 650 P2d 97, *rev den* 293 Or 653 (1982)] i.e. the nature of the crime in terms of its bearing on the defendant's credibility, in that regard I believe both of these crimes which the State is referring to, are high on the scale of veracity-related crimes and probative on the issue of the defendant's credibility as a witness. On the fact, point in time of the conviction, on the date of the prior convictions in terms of proximity or remoteness to the present proceeding, we know that to have probative value of the prior conviction decreases as the conviction becomes more removed in time or rehabilitation is demonstrated. Here the convictions go to April 6, 1981 and are not so remote. So I think that here the convictions have again — again are probative on the issue of credibility. The similarity between the past crimes and the charged crimes, of course, this relates to the prejudicialness effect because the concern that the jury even despite a limiting instruction, would say the guy did it before, would do it here. These crimes are very high on the prejudicial aspect. So now we have, unlike Rule 403 and 609, the Court must determine the probative value of presenting this evidence outweighing the prejudicial effect against the defendant. That's discretionary decision and I'm

Defendant did not testify at trial.

OEC 609 provides, in pertinent part:

"(1)   For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime in other than a justice's court or a municipal court shall be admitted if elicited from the witness or established by public record, but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the

---

glad for that, because it is a difficult decision. I might say on the fourth criterion, which is the importance of the defendant's testimony — I testified before the Oregon Legislative Assembly on this and pointed out that actually this factor should not be utilized in making the balance determination because that factor was taken into account in setting forth the formula of the conflicting interest of the two. But anyway it's in here. In other words, in adopting this balancing test, the Legislative Assembly was adopting a rule and balancing the interest of the defendant to being able to tell a story versus the interest of the prosecution being able to convey to the jury information concerning the defendant's credibility as a witness. And so the idea of the importance of the defendant's testimony is already a factor in the previous test but it's in the voluntary. Anyway, I think that the Court in the exercise of its discretion, considering the time of the conviction and the nature of the crimes, I would conclude that the probative value, which is the tendency of the prior convictions to prove the defendant is not a credible witness, slightly overweighs its prejudicial effect, that is the tendency of the prior convictions to prove the defendant is guilty of the crime for which he is being charged, slightly ----

"MR. CORRIGAN: Could the Court think of any decision where there are more prejudicial crimes?

"THE COURT: There is no question about the prejudicial — what causes this Court to say slightly is the close proximity of the crimes in time. This is April 6, 1981. Now in the indictment in this particular case it's July 26, 1982, which is a span of roughly a year plus a couple of months.

"MR. CORRIGAN: Of course that judgment isn't the date of the prior event, it's the date ----

"THE COURT: The date of the convictions.

"MR. CORRIGAN: Not the date he was ----

"THE COURT: I don't know the date, I don't have the charging instrument. I can assume it would be substantially prior to that. Obviously if he had a trial — no, there was a guilty plea at that time.

"MR. CORRIGAN: Yes, Your Honor.

"* * * I would like to have a clear chest here, Mr. Corrigan, but I would — I think that my reading of the cases from the Federal Circuit and how they balanced it in applying all these, I think that because the crimes are high on the scale of veracity-related crimes and there is close proximity, reasonably close proximity as far as date, that's slightly overweighs the prejudicial effect and I'll give a limiting instruction that this can be used only on the question of credibility and not guilt and that will be the ruling of the Court."

probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved false statement."

In *State v. Carden,* 58 Or App 655, 650 P2d 97, *rev den* 293 Or 653 (1982), we held that the question whether the probative value of evidence outweighs its prejudicial effect is within the trial court's discretion. *See State v. McClure,* 298 Or 336, 692 P2d 579 (1984); *State v. Madison,* 290 Or 573, 578, 624 P2d 599 (1981).

■    The prior convictions here were for burglary and robbery. The dishonesty involved in those crimes weighs in favor of admissibility. The convictions were obtained 19 months prior to the present trial. The current crimes were committed while defendant was on parole for his prior convictions. Those factors weighs in favor of admissibility. *See State v. Carden, supra,* 58 Or App at 659-60. The convictions were for the same type of crime charged here. That factor weighs against admissibility. *State v. Carden, supra,* 58 Or App at 659-60. As to the importance of defendant's testimony at trial, we conclude that his testimony was of marginal importance. If anything, this factor weighs against admissibility.[2] The state's evidence did not consist merely of different witnesses' versions of the event. It included fingerprint evidence and other circumstantial evidence. *See State v. Carden, supra,* 58 Or App at 661. In sum, the trial court applied the relevant criteria and concluded that the probative value of the prior-crimes evidence slightly outweighed the possibility of discouraging defendant from testifying. We find no abuse of discretion. *State v. McClure, supra; State v. Carden, supra.*

■    Defendant next contends that the trial court erred in imposing cumulative sentences for multiple convictions.[3] In

---

[2] As we noted in *Carden,* 58 Or App at 661, the weight to be given the importance of defendant's testimony is a complex question. The trial judge here expressed reservations that this factor should be used in making the balancing determination. *See* note 1, *supra.*

[3] The trial court stated:

"* * * [F]irst of all I do not find merger has taken place between robbery, the burglary and the robbery I and robbery I in the three charges in the indictment 82-09-37174. I believe that under the current reading of the case law, although I have to concede that it's not all that crystal clear, that these were non-mergeable offenses.

"MR. CORRIGAN: Neither the robbery with each other or them with the

*State v. Cloutier,* 286 Or 579, 599, 596 P2d 1278 (1979), the Supreme Court said that it is the duty of this court, in the first instance, to develop criteria for imposition of cumulative sentences. In *State v. Kessler,* 297 Or 460, 465, 686 P2d 345 (1984), the Supreme Court explained that the major element in assessing whether multiple statutory violations are meant to carry cumulative sentences is whether they were committed in the course of a single criminal episode joined in time, place and circumstances and directed toward a single criminal objective.[4]

The District of Columbia Circuit Court of Appeals considered this problem in *Irby v. United States,* 390 F2d 432 (DC Cir 1967), a case cited in *State v. Cloutier, supra.* After pointing out that housebreaking violates the security of the home, while robbery violates the security of the person, the court considered Congress' purpose in forbidding each:

> "One who wrongfully goes into a house to pilfer what he can find may or may not start out with a purpose to rob, if necessary. If he consciously entertains both purposes from the beginning, it can be said that he sets out with an intent to commit both larceny and robbery, or crimes against both property and person, if the opportunity presents itself. In such circumstances, he will be guilty of housebreaking in either event once he crosses the threshold, but, if he retires upon finding the house unoccupied and without robbing the occupant, he has made the decision which saves him from punishment for robbery. The point is, of course, that his invasion of the premises to steal does not irrevocably commit him to rob from the person of anyone he finds there. The choice is still his up to the moment of confrontation. If he decided to rob, consecutive punishments are not made available solely as a means of exacting greater retribution. Congress could well have conceived them as a deterrent to compromising the safety of the person as well as the security of the premises. They illuminate the differing dangers to society inherent in stealing

---

burglary?

"* * * That's what I'm holding, that's why I imposed the sentences I have. I'm finding that because of the facts for which this Court heard in this case before the jury they clearly demonstrate to me that these were separate and punishable offenses non-mergeable."

[4] The Supreme Court states in *Kessler, supra,* that its task is to discern legislative intent in the absence of express language in the criminal code. However, the court never directly addresses the relevant statutes in attempting to discern that intent.

what one finds in a vacant house, and robbing the occupant as well when he proves to be at home. We cannot, at any rate, say with confidence that Congress did not comtemplate some additional disincentive for the latter." 390 F2d at 433. (Footnotes omitted.)

We, too, cannot say with confidence that the legislature did not contemplate additional disincentives for the robberies proved here. The legislature could not have intended that, having already committed burglary and theft, defendant then would have *carte blanche* to commit robbery without risk of additional sanctions. It would be irrational to construe the relevant statutes to provide no disincentive for those subsequent violent crimes. Defendant achieved a separate criminal objective when he committed the robberies and that he thereby subjected himself to cumulative sentences. We conclude that the trial court did not err in imposing cumulative sentences. *See State v. Kessler, supra; State v. Cloutier, supra; State v. Goldsby,* 59 Or App 66, 650 P2d 952 (1982); *Rolin v. Cupp,* 57 Or App 64, 643 P2d 1310, *rev den* 293 Or 373 (1982); *State v. Dillman,* 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979).[5]

■    Defendant attacks the legality of the minimum sentences imposed by the trial court pursuant to ORS 144.110(1). We find no error. *State v. Turner,* 296 Or 451, 676 P2d 873 (1984); *State v. Brown,* 296 Or 461, 676 P2d 877 (1984).

Affirmed.

**RICHARDSON, J.,** dissenting.

I agree with the majority that the court did not err in ruling that evidence of defendant's prior conviction was admissible. I also agree that the minimum sentence imposed

---

[5] This case is distinguishable from *State v. Papineau,* 53 Or App 33, 630 P2d 904, *rev den* 291 Or 662 (1981), where the defendant entered a residence and stole a rifle. As he was leaving, he encountered the owner of the residence. He confronted him with the rifle and made his escape. We held that, because defendant's objective was the same, to gain possession of the rifle, the robbery and burglary charges merged for conviction and sentencing purposes. The defendant could properly be convicted only of the robbery. Here, there was uncontradicted evidence that defendant, after entering the house, first stole money from a wallet belonging to one of his victims. At that time the burglary, and the theft that was the criminal objective of defendant's entry, were complete. Thereafter, defendant entered the bedrooms of his victims and robbed each of them at knifepoint.

was lawful. However, I disagree with the majority that separate sentences were lawfully imposed for each conviction. I therefore dissent from the affirmance of the judgment.

The analysis begins with certain settled principles. An indictment for burglary must include a specific allegation of the crime the accused intended to commit upon entry of the building. The accused may also be indicted for commission or attempted commission of the intended crime. The allegations of the burglary charge and the intended crime may be submitted to the jury, and the jury may properly find the accused guilty of both charges. *State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979). However, the court may not enter a judgment of conviction, nor sentence the accused, on both the burglary and the crime he intended to commit. *State v. Cloutier, supra.*

A problem of multiple sentences arises when the accused is convicted of more than one crime after the unlawful entry or a crime different from that originally intended. The problem becomes more intense because of the nature of burglary and the proof of the requisite intent element.

The crime of burglary is complete when the accused trespasses with the concurrent intent to commit a crime. If he does nothing else after the unlawful entry, he is subject to the maximum penalty for burglary. If he commits the intended crime, he is still subject only to the maximum penalty for burglary *or* the penalty for the crime committed if that penalty is greater than that for burglary.

The gravamen of burglary is not just the breaking and entering but the trespass coupled with the probability, based on the intent of the burglar, of a more serious crime than unlawful entry. As *Cloutier* holds, the legislature could not have intended that an accused be punished for burglary and the intended crime. The penalty for burglary was designed to punish the probability as well as the actual crime accomplished. The analysis must then include an appraisal of what the accused intended after the unlawful entry.

That intent element is rarely proven by evidence of the burglar's thought process. In the ordinary case, it is established by the circumstances of the entry or what actually occurred following the trespass. If, after entry, the accused in

fact steals property of the occupants, the jury may infer that that was the intent of the entry.

Because an indictment for burglary must include an allegation of a specific criminal act that was intended, there is of necessity some precision required in describing the accused's intent. It, however, defies reality to suppose that a burglar's thought process is as precise as the statutory elements of a particular crime. A burglar may enter with a purpose to take whatever he deems of value and to confront the occupants with force if necessary. An ingenious prosecutor can carve out a number of specific crimes from the post entry conduct of the accused and argue that these separate crimes are based on a different intent from that formed before the initial unlawful entry.

In this case, the indictment alleged that defendant unlawfully entered the dwelling with intent to commit the crime of theft. There was no separate charge of theft, but two separate counts alleged robbery of the two occupants. The majority dissects the defendant's purpose into thin slices and microscopically examines each slice to conclude he formed additional purposes to rob after the unlawful entry with the single intent to steal property in the dwelling. After quoting extensively from *Irby v. United States,* 390 F2d 432 (DC Cir 1967), the majority says:

> "* * * Defendant achieved a separate criminal objective when he committed the robberies and that he thereby subjected himself to cumulative sentences. * * *" 71 Or App at 498.

Defendant's intent when entering the dwelling was simply to take some property. He was armed with a knife and a can of mace, and he wore a mask. That indicated he was prepared to use force, if necessary, and to prevent identification by the occupants of the dwelling. He was prepared to do those things which are described as robbery when he entered the dwelling. Describing the intent element of the burglary as simply intent to commit the crime of theft is not consistent with the reality of human thought and the facts of this case. The fact that he did the things which made the crime robbery, rather than simply theft, does not change the basic intent to take property by whatever means was necessary. In other words, he entered, armed and masked, to commit theft or

robbery as might become necessary. Because the legislature could not have intended that a defendant be punished separately for burglary and the intended crime, *State v. Cloutier, supra,* I conclude that the separate sentence for burglary is improper.

My analysis raises an additional problem: whether defendant can properly be sentenced separately for each robbery he committed. Although my conclusion may defy the logic of that analysis, I conclude that separate sentences are proper. Although there was a single criminal objective, to enter and take property, by force if necessary, the immediate objective of forcibly taking property from the first victim was fully accomplished. The second robbery was an intermediate crime toward and the larger objective of the initial burglary. Under *State v. Kessler,* 297 Or 460, 686 P2d 345 (1984), as I understand it, the separate crimes are subject to cumulative punishment. This is different from the analysis of *Cloutier* regarding a burglary and the accomplishment of the purpose of the unlawful entry.

The judgment of conviction for burglary and the resultant sentence for that offense should be set aside and the convictions and sentences on the robberies affirmed.

I dissent. Joseph, C. J., and Warren and Newman, JJ., join in this dissent.