# CHARLES LEE SMITH,
### *Appellant,*

*v.*

# STATE OF OREGON,
### *Respondent.*

(128,465; CA A34998)

717 P2d 240

Steven H. Gorham, Salem, argued the cause and submitted the brief for appellant.

Robert Jackson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Scott McAlister, Assistant Attorney General, James E. Mountain, Jr., Solicitor General and Dave Frohnmayer, Attorney General, Salem.

Before Gillette, Presiding Judge Pro Tempore, and Van Hoomissen and Young, Judges.

GILLETTE, P. J., Pro Tempore.

## GILLETTE, P. J., Pro Tempore

This is an appeal from a denial of post-conviction relief. Petitioner argues that he was denied the right to be present at his post-conviction hearing as provided in ORS 138.620(1). He also contends that the post-conviction court erred when it found that his sentences for burglary and theft did not merge. We affirm.

On September 28, 1976, a jury found petitioner guilty of burglary in the second degree and theft in the first degree. The circuit court sentenced him to consecutive terms of five years on these charges. Petitioner sought to have his convictions reversed through post-conviction relief. ORS 138.510 *et seq.* He alleged three ways in which his constitutional rights were violated: (1) the trial court should have merged the burglary and theft sentences, (2) he was not allowed to discharge his trial attorney and (3) his trial attorney was ineffective.

While awaiting his post-conviction hearing, petitioner was incarcerated in a federal prison in Lompoc, California. His attorney moved to have him transfered from California so that he could be present at his post-conviction hearing. This motion was denied. A new post-conviction attorney was appointed, and a hearing date was set. At the hearing, counsel moved for a continuance until petitioner could be present. Alternatively, counsel again moved to have petitioner transfered from California. Both motions were denied. The attorney was forced to go forward with the hearing without petitioner. On February 6, 1985, the post-conviction court denied petitioner's claims for relief.

ORS 138.620(1) provides:

> "After the response of the defendant to the petition, the court shall proceed to a hearing on the issues raised. If the defendant's response is by demurrer or motion raising solely issues of law, the circuit court need not order that petitioner be present at such hearing, so long as petitioner is represented at the hearing by counsel. *At the hearing upon issues raised by any other response, the circuit court shall order that petitioner be present.*" (Emphasis supplied.)

Petitioner argues that, because the state's post-conviction response was not "by demurrer or motion raising solely issues

of law," ORS 138.620(1) mandates that he be present at his post-conviction hearing. The state responds that, before the circuit court can order a petitioner to be present, it must have jurisdiction over the petitioner's custodians. Because it did not have jurisdiction over his custodians in the present case, the state contends, the circuit court could not order that petitioner be present and, consequently, the statute does not apply to this case. We view the problem slightly differently.

It is important to recognize what is *not* at issue here. Petitioner makes no contention that the state chose to send him to Lompoc or that it has any legal authority to obtain his return to this jurisdiction. Rather, he contends that the court should have ordered the state to produce him when the court knew that the state had no legal authority to carry out the order. We agree that, under the plain language of the statute, the trial court's duty is clear. It should have entered the order to bring petitioner to court. Our inquiry does not stop there. We must ask, "Suppose the court had entered the order. What difference would it have made?"

■ On this record, at least, the answer is: None. There is nothing in this record to suggest that the state could have accomplished informally what it had no legal authority to accomplish formally. In the absence of such a suggestion, the trial court's error is harmless.[1]

■ Petitioner also contends that the post-conviction court erred in concluding that the sentences of burglary and theft did not merge. The evidence at trial showed that, at about 5:15 a.m. on the morning in question, petitioner and his co-defendant smashed a store window, entered the store and stole a typewriter. The burglary charge arose out of those events. They took the typewriter to the home of Dennis Reed. Reed called a "fence," who was actually an undercover police officer. The officer came to Reed's house at approximately 6:30 a.m. and, after some negotiation, bought the typewriter from petitioner and the co-defendant. The theft charge arose out of these later events.

---

[1] In view of our holding, we need not reach the state's harmless error theory that petitioner could have participated through ORS 138.620(2), which allows for evidence to be received by "affidavits, depositions, oral testimony or other competent evidence."

Petitioner contends that, although it may have been proper to charge and convict him of burglary and theft, it was improper for the trial court to sentence him for both crimes. He points out that it is an established rule in Oregon that the crimes of burglary and theft of the property taken in the burglary merge. *State v. Woolard,* 259 Or 232, 238, 484 P2d 314, 485 P2d 1194 (1971); *State v. Dechand,* 13 Or App 530, 537, 511 P2d 430 (1973). Petitioner then argues by analogy that, even though the crimes of burglary and theft in this case did not occur at the same time and place, he should only be subject to one sentence for both, because he had only one criminal objective, *i.e.,* theft (by burglary) of property for resale.

The state responds that, although theft and burglary merge in some situations, this is not one of them. The state theorizes that this case involves severable thefts. The first, theft by taking, ORS 164.015(1), occurred when petitioner took the typewriter from the store. The second, theft by receiving, ORS 164.055(1)(c), occurred when petitioner sold the typewriter to the undercover police officer. The state concedes that the theft by *taking* merges with the burglary, but it argues the theft by *receiving* does not, because the theft by receiving had a totally different criminal objective and was separated in time from the burglary.

We agree with the state. Petitioner really had two criminal objectives: (1) obtaining property by theft and (2) selling property without having title to it for money. There were also two separate victims: (1) the original owner, who loses his property, and (2) the purchaser, who has parted with his money but does not obtain good title. These are not artifical distinctions. It would be incongruous, we think, to hold that there is no greater potential criminal liability for stealing an item in a burglary and then selling it than for stealing an item and keeping it for one's own use. *See State v. Kyles,* 71 Or App 492, 498, 692 P2d 706 (1984), *rev den* 298 Or 773 (1985).

Affirmed.