Argued and submitted November 27, 1985, resubmitted In Banc May 7, affirmed in part and vacated in part June 18, Atkinson's reconsideration denied July 25, State's reconsideration denied September 5, both petitions for review denied September 30, 1986 (302 Or 36)

STATE OF OREGON,
*Respondent,*

*v.*

DAVID LEE ATKINSON,
*Appellant.*

(84-0626; CA A35487)

722 P2d 9

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

BUTTLER, J.

Rossman, J., dissenting.

## BUTTLER, J.

Defendant shot and killed an employe of a donut shop in the course of robbing it. He was convicted by a jury of aggravated murder, ORS 163.095, robbery in the first degree, ORS 164.415, and of being an ex-convict in the possession of a firearm. ORS 166.270. The trial court imposed the then mandatory sentence of life imprisonment without possibility of parole for 20 years for the aggravated murder conviction, ORS 163.105(2),[1] a sentence of 20 years imprisonment for the robbery conviction, to run consecutively, and a sentence of five years for the firearm conviction, to run concurrently with the first sentence.

On appeal, defendant contends that the trial court erred in denying his requested instructions on the affirmative defense of extreme emotional disturbance and on the lesser included offense of intentional murder, ORS 163.115(1)(a), and in entering separate judgments of conviction and separate sentences for aggravated murder and robbery in the first degree. We agree with defendant's last contention and, accordingly, vacate his conviction and sentence for robbery in the first degree. We affirm in all other respects.

The crimes occurred on June 28, 1984, at about 1:30 in the morning. Defendant entered the restaurant and asked the employes on duty, Singer, a baker, and Kroder, a clerk, about the local bus schedule. Singer informed him that Kroder was familiar with the schedule and returned to his work, after which he overheard the two men discussing the schedule. Singer then heard an explosion. He looked up and observed defendant pointing a pistol at him. Defendant then ordered him to open the cash register and, when defendant appeared preoccupied with its contents, he escaped. When he returned with the police, Kroder was dead and approximately $75 was missing from the register.

Defendant contends that, at the time of the homicide, he was acting under the influence of an extreme emotional disturbance, evidenced by his psychological history, and

---

[1] ORS 163.105 (*as amended by* Or Laws 1985, ch 3, § 1) provides that persons convicted of aggravated murder shall be sentenced to death or life imprisonment without the possibility of parole for 30 years.

caused, at least in part, by his drug dependency, his dependency on his drug supplier and a lack of sleep. He claims that he was entitled to an instruction on the affirmative defense of extreme emotional disturbance, because that defense may be asserted by an accused charged with intentional murder under ORS 163.115(1)(a), which he contends is a lesser-included offense under aggravated felony murder. The state contends that, because extreme emotional disturbance is not a defense to felony murder, *see State v. Reams,* 47 Or App 907, 913, 616 P2d 498 (1980), *aff'd* 292 Or 1, 636 P2d 913 (1981), it is not a defense to aggravated felony murder. We need not resolve that issue, however, because defendant would not be entitled to the instruction he requested, even if an accused charged with aggravated felony murder may, under some circumstances, be entitled to it.

ORS 163.095 provides that aggravated murder is murder as defined in ORS 163.115(1), committed under, or accompanied by, circumstances that the legislature has determined warrant enhanced penalties. ORS 163.115(1) provides that criminal homicide constitutes murder when:

"(a)    It is committed intentionally, except that it is an affirmative defense that, at the time of the homicide, the defendant was under the influence of an extreme emotional disturbance; or

"(b)    It is committed by a person, acting either alone or with one or more persons, who commits or attempts to commit any of the following crimes and in the course of and in furtherance of the crime the person is committing or attempting to commit, or during the immediate flight therefrom, the person, or another participant if there be any, causes the death of a person other than one of the participants:

"* * * * *

"(G)    Robbery in the first degree as defined in ORS 164.415."

Murder, as defined by subsection (a) is commonly referred to as intentional murder; murder as defined by subsection (b) is commonly referred to as felony murder. ORS 163.095(2)(d), which defines what is commonly referred to as aggravated felony murder, provides that felony murder is aggravated

murder when the accused "personally and intentionally" committed the homicide.[2]

Defendant's contention that intentional murder is a lesser-included offense of aggravated felony murder is premised on the fact that, because intent is an element of aggravated felony murder, all of the elements of intentional murder are necessarily included in the commission of the aggravated offense. With that contention we have no quarrel. *See State v. Cloutier,* 286 Or 579, 596 P2d 1278 (1979); *Riley v. Cupp,* 56 Or App 467, 472 n 6, 642 P2d 333, *rev den* 293 Or 146 (1982). Therefore, the state's failure to prove all of the elements necessary to convict an accused of intentional murder precludes a conviction for aggravated felony murder. It does not, however, preclude a conviction for felony murder, which is also a lesser-included offense of aggravated murder and for which extreme emotional disturbance is no defense. *See State v. Reams, supra.* Therefore, if extreme emotional disturbance may be asserted as an affirmative defense to aggravated felony murder, because intentional murder is a lesser-included offense of that crime,[3] then a defendant who successfully asserts the defense would be guilty of felony murder only, not aggravated felony murder.

■    Defendant's requested instruction included the following:

"The defendant has raised the affirmative defense of Extreme Emotional Disturbance, to the charge of Aggravated Felony Murder. If the defendant proves this affirmative defense, then the defendant is not guilty of the charge of Aggravated Murder but is guilty of manslaughter."

---

[2] ORS 163.095 provides:

"As used in ORS 163.105 and this section, 'aggravated murder' means murder as defined in ORS 163.115 which is committed under, or accompanied by, any of the following circumstances:

"* * * * *

"(2)(d)   Notwithstanding ORS 163.115(1)(b), the defendant personally and intentionally committed the homicide under the circumstances set forth in 163.115(1)(b)."

[3] We note that, although the legislature has expressly provided that defendants charged with intentional murder under ORS 163.115(1)(a) may assert the affirmative defense, it has not so provided for defendants charged with aggravated murder. *See* ORS 163.115(1)(a); ORS 163.135.

That is an incorrect statement of the law. Even assuming that he could raise the defense, he was, at most, entitled to an instruction that, if he acted under an extreme emotional disturbance, the severity of the offense would be reduced from aggravated murder to felony murder, not from aggravated murder to manslaughter. Accordingly, the trial court did not err in refusing to give the requested instruction.[4] *See State v. Francis,* 284 Or 621, 626, 588 P2d 611 (1978); *State v. North,* 238 Or 90, 93, 390 P2d 637 (1964).

Defendant offers no basis for his contention that he was entitled to an instruction on the lesser-included offense of intentional murder, and we see no reason why he was.[5] He conceded that he was the one who committed the homicide during the commission of the robbery. Therefore, if the jury found that he committed the homicide intentionally, he would necessarily be guilty of both offenses, making him guilty of aggravated murder. On the facts of this case, the jury could not have found him guilty of intentional murder without finding him guilty of aggravated murder as well. There was, therefore, no error in refusing to submit the lesser included offense to the jury. *See State v. Reams, supra,* 47 Or App at 918.

Defendant's last contention is that he may not be convicted of both aggravated felony murder and the underlying felony, because the latter offense is a lesser included offense under the former. In *State v. Cloutier, supra,* the court said:

> "As already stated, an offense may be described as being 'merged' in another if all of its elements are necessarily included in the commission of the other offense. In such a case a judgment of conviction on only one of the charges is proper. *See* ORS 136.465; *State v. Washington,* 273 Or 829, 543 P2d 1058 (1975); *State v. Roach,* [271 Or 764, 534 P2d 508 (1975)]; *State v. Fish,* 282 Or 53, 577 P2d 500 (1978) (felony murder includes commission of felony)." 286 Or at 597.

*See also State v. Watkins,* 67 Or App 657, 679 P2d 882, *rev den*

---

[4] We do not decide whether, on the basis of the evidence presented, he would have been entitled to an appropriate jury instruction on the affirmative defense of extreme emotional disturbance if, in fact, he was statutorily entitled to assert the defense. *See generally State v. Carson,* 292 Or 451, 640 P2d 586 (1982).

[5] The jury was instructed on the lesser-included offense of felony murder.

297 Or 272 (1984) (conviction for murder merges into conviction for aggravated murder). We see no reason to diverge from the general rule.

Defendant was charged with only one count of robbery,[6] and that robbery formed the predicate for the aggravated murder charge. At the time defendant was sentenced, ORS 163.105(2) mandated that persons convicted of aggravated felony murder be sentenced to imprisonment for life without the possibility of parole for 20 years. The maximum penalty that could have been imposed at the time of defendant's conviction for non-aggravated felony murder, on the other hand, was life imprisonment; there was no mandatory minimum.[7] It is apparent, therefore, that the legislature took the aggravating circumstances underlying aggravated felony murder, that the accused "personally and intentionally committed the homicide," into account when it set the penalties for the aggravated offense. There is no reason to assume that the legislature meant to enhance the penalty further by permitting those found guilty of aggravated felony murder to be separately convicted and sentenced for the underlying

---

[6] The aggravated murder count alleged that defendant

"did unlawfully and intentionally commit the crime of robbery in the first degree and in the course of and in the furtherance of said crime which the said defendant was committing, the said defendant personally and intentionally did cuase [sic] the death of another human being, to-wit: Thomas Dougherty Kroder, not a participant in the crime, by shooting Thomas Dougherty Kroder with a firearm."

The robbery count alleged that defendant

"did unlawfully and knowingly use and threaten the immediate use of physical force upon Thomas Dougherty Kroder and Rolland Louis Singer, by shooting Kroder with a firearm and pointing the firearm at Singer, and was armed with a deadly weapon, to-wit: a firearm, while in the course of committing and attempting to commit theft of property, to-wit: money, with the intent of preventing and overcoming resistance to the said defendant's taking and retention immediately after the taking of the money."

The dissent apparently believes that defendant was charged with more than one robbery. It is clear that he was charged with only one in which both Kroder and Singer were named as the victims. Given our decision in *State v. Perkins*, 45 Or App 91, 607 P2d 202 (1980), it is doubtful that, even if he had been charged with and convicted of two robberies, he could be sentenced for both. The concurring opinion of Schwab, C. J., in *Perkins* acknowledges that the court's decision cannot be reconciled with *State v. Dillman*, 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979), on which the dissent relies on here.

[7] If the defendant used a gun, ORS 161.610 mandated a minimum sentence, unless the trial court found mitigating circumstances.

felony.[8] It follows that defendant's conviction and sentence for robbery must be vacated. *See State v. Fish, supra,* 282 Or at 56.

Conviction and sentence for aggravated murder affirmed; conviction and sentence for robbery in the first degree vacated.

**ROSSMAN, J.,** dissenting.

I respectfully dissent. The law of merger has been in a state of confusion for some time in Oregon and needs serious revision, or at least some meaningful clarification. Our struggle with this case is further evidence of this dilemma. The problem is that it is impossible to reconcile all of the many inconsistent cases which are regarded as having some precedential value.

Here, I am convinced that defendant should not be given a bonus by not being sentenced for robbery as well as aggravated murder. He was properly subjected to punishment for each crime that he committed, and he should not be rewarded for having committed multiple offenses.

*State v. Kessler,* 297 Or 460, 686 P2d 345 (1984), the Supreme Court's most recent statement of the law of merger, supports the trial judge's ruling. *Kessler* tells us that multiple statutory violations carry cumulative sentences, unless the acts were committed in the course of a single criminal episode joined in time, place and circumstances and directed toward a single criminal objective. The facts here present the plight of two separate victims, who were the objects of separate and identifiable criminal acts and objectives.

Defendant shot Kroder and fatally wounded him while in the process of committing a robbery. That was the completed criminal act for which defendant was charged with

---

[8] We recognize that we held in *State v. Norris,* 40 Or App 505, 595 P2d 1261, *rev den* 287 Or 355 (1979), that when aggravated murder was predicated on there being more than one murder victim under *former* ORS 163.095(2)(c) (*amended by* Or Laws 1981, ch 873 § 1), there were as many aggravated murders as there were victims. To the extent that that case holds that, even though it is the second murder that enhances the offense to aggravated murder, the defendant may be convicted of two enhanced offenses, it may be difficult to distinguish from *State v. Cloutier, supra,* or this case. However, here Kroder was the murder victim and also a robbery victim, and the same force was used for the predicate offense as was used for the murder.

aggravated murder. Then, when Singer appeared, defendant threatened him, put him in fear for his life and took money from the cash register. This incident was a different and completed criminal act, *i.e.,* robbery—independent from the aggravated murder of Kroder. Singer was a second victim. He was the object of a distinct criminal act and objective. Accordingly, defendant should be sentenced separately for the aggravated felony murder of Kroder and for the robbery of Singer.

*Kessler* requires that, when a defendant has multiple criminal objectives and there are multiple victims involved, the proper result is for the defendant to receive cumulative sentences.[1] What is significant here is that one victim was murdered and a second victim was robbed. Whether it was defendant's original objective to take money from the establishment, from Kroder or from Singer, is unimportant. In *State v. Dillman,* 34 Or App 937, 580 P2d 567 (1978), *rev den* 285 Or 195 (1979), the defendant was convicted of robbing a bank. He obtained money from a single source: the bank. However, he pointed a gun at and demanded money from four different tellers, thus committing four robberies. Because he committed four separate offenses, he was sentenced for each. In this case, defendant also took money from a single source; the donut establishment; but, as in *Dillman,* he threatened multiple victims in order to obtain money. The act against each victim resulted in two distinct offenses. Similarly, in *State v. Kyles,* 71 Or App 492, 692 P2d 706 (1984), *rev den* 298 Or 773 (1985), the defendant received cumulative sentences for convictions of burglary and two counts of robbery. There, the defendant broke into a home, stole money from a wallet, then proceeded to threaten and take property from two victims. Because the defendant achieved a separate criminal objective when he committed the robberies, the court concluded that cumulative sentences were appropriate.[2]

---

[1]The majority indicates that *State v. Perkins,* 45 Or App 91, 607 P2d 1202 (1980), prevents multiple sentences, even though there are multiple victims. In *Perkins,* we stated that there could be only one sentence if there is a single criminal episode or objective, even if there are multiple victims. However, that is not the situation here, where defendant had two separate criminal objectives. In any event, I believe that *Perkins,* like so many of the merger cases of yesteryear, is of dubious authority in the light of *Kessler.*

[2]Although ORS 137.122 (effective September 9, 1985), was not in effect at the time of defendant's actions, and therefore is not controlling here, it provides the current rule for consecutive sentences, including offenses involving multiple victims.

I get the impression that the majority believes that its result—as unreasonable as it may be—is somehow mandated because of the way in which the grand jury charged this defendant. The majority says that the multi-count indictment charges defendant with only *one* robbery. I suggest a different construction. The indictment contains multiple counts. The first charges defendant with aggravated murder by personally and intentionally killing Kroder during the course of a robbery. The second alleges that he committed robbery against Kroder *and* Singer.

I know of no requirement that, as the majority would suggest, the predicate offense for an aggravated murder must be charged in a separate count. Here, what I would interpret as being the first robbery, without any reference to Singer, is spelled out in the aggravated murder count involving Kroder. Count II, which I would regard as a separate robbery, refers to Kroder *and* Singer. "And" is used in the conjunctive; as such it identifies two separate victims. This reading is not inconsistent with the determination made by the court after it considered the jury's verdict, which found defendant guilty of robbery; nor is it inconsistent with the sentence imposed by the trial court.

Even if defendant was charged with only one robbery, I believe that he would still be subject to separate judgments of conviction and sentences for aggravated murder *and* robbery. I recognize that separate sentences cannot be imposed for traditional felony murder and the underlying crime on which the felony murder is predicated. The rationale is that in felony

---

That statute illustrates the legislature's intent to impose consecutive sentences in cases like defendant's. ORS 137.122(4) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) The criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a substantial risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a substantial risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous uninterrupted course of conduct."

murder, proof of the underlying felony is, in effect, a substitute for proving the intent to kill which would otherwise be a required element of murder; and it is unjust to impose separate sentences for felony murder and the underlying felony when the two are so closely interrelated. However, that rationale has no application to the aggravated murder with which defendant was charged. The aggravated murder statute, ORS 163.095(2), clearly requires that the murderer intentionally kill his victim in the course of the underlying felony. However, the presence in the killer's mind of a discrete intent to kill the victim, over and above the intent to commit the separate felony, justifies the imposition of separate convictions and sentences for the separate, intentionally-committed offenses. *See, e.g., State v. Garcia,* 288 Or 413, 423, 605 P2d 671 (1980), involving separate intents to rape, sodomize, and kidnap.[3]

Because the two victims in this case were the objects of separate and identifiable criminal acts, and because the jury's verdict clearly establishes that defendant intended to commit both homicide and robbery, the trial court should be affirmed.

Van Hoomissen, J., joins in this dissent.

---

[3]Moreover, in shooting Kroder and subsequently compelling Singer to open the cash register at gunpoint, defendant used and threatened to use more force than was necessary to effect either the murder or the robbery alone.